IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROAD SAFETY SERVICES, INC., and FORWARD TRAFFIC AND MARKING, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> MICHAEL GILBERTSON, and CENTURY TRAFFIC, LLC, <br><br> Defendants. | **8:25CV622** <br><br> **MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

Plaintiffs Road Safety Services, Inc., (RSS) and Forward Traffic and Markings, LLC, (Forward Traffic) (collectively Plaintiffs) bring this action seeking damages and other relief against a former employee, defendant Michael Gilbertson, his current employer, defendant Century Traffic, LLC, (Century Traffic), and a recruitment company, Educated Solutions Corp (Educated Solutions). Filing 1. Plaintiffs allege various claims arising from Gilbertson's alleged violations of contractual agreements and duties and Gilbertson's and Century Traffic's alleged tortious interference with Plaintiffs' contractual relationships. Filing 1. This case is now before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. Filing 25. In this Order the Court addresses only the part of that Motion seeking a temporary restraining order (Motion for TRO). For the reasons stated below, the Court denies the Motion for TRO.

## I. INTRODUCTION

### A. Factual Background

The Motion for TRO relies entirely on the factual allegations in Plaintiffs' Complaint, Filing 1, and two exhibits attached to the Complaint, Filing 1-1; Filing 1-2. *See* Filing 25 at 3–9.

Plaintiffs assert that the allegations in the Complaint are supported by a Declaration attesting that the "allegations contained [in the Complaint] are true and correct based on [the declarant's] personal knowledge." Filing 25 at 4 n.1 (citing Filing 22-1 at 1 (¶ 3) (Dec. of Nick Lewitzke)). Thus, the Court draws its summary of the factual background here from the Complaint.

RSS alleges that it is a Delaware corporation with its principal place of business in Omaha, Nebraska. Filing 1 at 1. Forward Traffic, also a citizen of Delaware, is allegedly a subsidiary of RSS. Filing 1 at 1 (¶ 2), 2 (¶ 7). Forward Traffic is allegedly the largest traffic control and pavement marking company in Wisconsin and is involved in every aspect of temporary traffic control, pavement marking installation, and sign installation. Filing 1 at 2 (¶ 10). Forward Traffic allegedly uses skilled pavement marking technicians and innovative methods and equipment in its business, and it alleges that the highly competitive nature of the industry makes client and vendor relationships, the protection of confidential information, and marketplace goodwill critical to success. Filing 1 at 3 (¶ 11).

Gilbertson, who is domiciled and resides in Wisconsin, is a former executive of Forward Traffic and remains an equity holder of HP RSS Topco LP, which appears to be an entity related to Plaintiffs. Filing 1 at 1 (¶ 2). However, Gilbertson is currently an employee of or affiliated with Century Traffic. Filing 1 at 1 (¶ 3). Century Traffic is a limited liability company apparently authorized to do business in Wisconsin with its principal place of business in Wisconsin. Filing 1 at 2 (¶ 4). Century Traffic is a competitor of RSS and Forward Traffic. Filing 1 at 4 (¶ 21). Educated Solutions is a corporation authorized to conduct business in and with its principal place of business in Wisconsin. Filing 1 at 2 (¶ 5). The allegations in the Complaint suggest that

Educated Solutions is an employee solicitation and recruitment company. *See* Filing 1 at 9 (¶¶ 47–49).

The Complaint and the Motion for TRO both allege that Gilbertson executed overlapping agreements with Plaintiffs containing certain restrictive covenants. Filing 25 at 5 (citing Filing 1 at 5 (¶ 29)). These covenants consisted of a Proprietary Matters Agreement, which included post-employment non-solicitation and confidentiality obligations, and an Amended and Restated Limited Partnership Agreement, which included post-employment non-competition obligations. Filing 1 at 5–8 (¶¶ 29–35); Filing 25 at 5–7.

In both their Complaint and their Motion for TRO, Plaintiffs allege that in May 2025, Gilbertson quit working for Plaintiffs and began working for Century Traffic in the same line of work. Filing 1 at 8 (¶¶ 37–39); Filing 25 at 4. Plaintiffs allege that Gilbertson and Century Traffic engaged in a scheme to violate Gilbertson's post-employment obligations by targeting Plaintiffs' employees and customers with the goal of driving Plaintiffs out of business in Wisconsin. Filing 1 at 8–9 (¶¶ 37–46); Filing 25 at 7. Plaintiffs allege that Century Traffic and Gilbertson engaged Educated Solutions to solicit and recruit Plaintiffs' employees and in doing so promised those employees that they would cover all legal fees if the poached employees were sued for breaching their restrictive covenants. Filing 1 at 9–10 (¶¶ 47–50); Filing 25 at 8.

Plaintiffs allege that they sent Gilbertson a cease-and-desist letter on June 12, 2025, with a copy to Century Traffic. Filing 1 at 10 (¶ 51); Filing 25 at 8. Plaintiffs allege that Century Traffic responded on June 27, 2025, by falsely stating that Gilbertson was employed as a "trainer" so that his employment did not violate his post-employment obligations to Plaintiffs. Filing 1 at 10 (¶¶ 51–

53); Filing 25 at 9. Plaintiffs allege that Gilbertson has not responded to Plaintiffs' letters and that neither Gilbertson nor Century Traffic has altered its unlawful conduct. Filing 1 at 10 (¶¶ 54–55).

Plaintiffs allege that the actions of Gilbertson, Century Traffic, and Educated Solutions have caused and will continue to cause Plaintiffs to suffer immediate and irreparable injury, loss, and damage. Filing 1 at 10 (¶ 56).

### B. Procedural Background

Plaintiffs eventually filed their Complaint in this action on October 17, 2025. Filing 1. Plaintiffs assert several causes of action. Count I alleges breach of contract against Gilbertson based on alleged breach of the restrictive covenants in the Proprietary Matters Agreement in Filing 1-1. Filing 1 at 10–11 (¶¶ 58–65). Count II alleges tortious interference with contract against Century Traffic based on interference with Gilbertson's Proprietary Matters Agreement with Gilbertson and by aiding and inducing Gilbertson to breach his post-employment restrictive covenants. Filing 1 at 11–12 (¶¶ 67–74). Count III alleges unjust enrichment against Gilbertson and Century Traffic based on their improper receipt of a benefit from unauthorized use and impairment of rights and interests held by Plaintiffs, resulting in inequity to Plaintiffs and retention of benefits by Gilbertson and Century Traffic. Filing 1 at 13 (¶¶ 76–80). Count IV alleges breach of fiduciary duty and duty of loyalty against Gilbertson including breach of the duty not to divulge, disclose, expose, or misuse Plaintiffs' proprietary information, or compete with Plaintiffs. Filing 1 at 13–14 (¶¶ 82–89). Count V alleges unfair competition against "all Defendants" by taking advantage of enjoying a "free ride" because Gilbertson and Century Traffic are not burdened with expenses incurred by Plaintiffs in developing their confidential information, relationships with employees and customers, and goodwill in the marketplace, and because Educated Solutions

4

conspired with Gilbertson and Century Traffic to take advantage of such information, relationships, and goodwill. Filing 1 at 14–15 (Filing 91–96). Plaintiffs' last claim in Count VI alleges a civil conspiracy against "all Defendants" to illegally solicit Plaintiffs' employees to leave Plaintiffs and work for Century Traffic in violation of their contractual agreements with Plaintiffs. Filing 1 at 15–16 (¶¶ 98–104).

Plaintiffs seek the following relief on their claims:

1.      Judgment in favor of Plaintiffs on all claims asserted against Defendants;

2.      An Order requiring Defendants to return to Plaintiffs all of Forward Traffic's and their clients' property constituting confidential and proprietary information, and other property of Plaintiffs in Defendants' possession or custody or under his control;

3.      An Order establishing a constructive trust over all compensation, profits, monies, accruals, increments, and other benefits Defendants obtained through their wrongful conduct and further requiring Defendants to disgorge and pay all such compensation, profits, monies, accruals, increments, and other benefits over to Plaintiffs;

4.      An Order directing that an accounting be conducted of all business and benefits Defendants obtained as a result of their unlawful conduct, and awarding all such business and benefits to Plaintiffs;

5.      An Order awarding Plaintiffs money damages in an amount to be proven at trial;

6.      An Order awarding Plaintiffs exemplary or punitive damages in an amount to be proven at trial based upon Defendants' unlawful acts;

7.      An Order awarding pre- and post-judgment interest;

8.      An Order awarding Plaintiffs their costs and attorney's fees incurred in bringing this action; and

9.      An Order awarding Plaintiffs such other relief as the Court deems just and proper.

Filing 1 at 16–17 (Relief Requested).

5

In response to Plaintiffs' Complaint, Century Traffic and Gilbertson filed a Motion to Dismiss or, in the Alternative, to Transfer Venue pursuant Federal Rule of Civil Procedure 12(b)(2). Filing 19.[1] Educated Solutions has been served with the Complaint but has not moved or pleaded in response to the Complaint. *See* Filing 11 (summons returned as to Educated Solutions). The Clerk has entered the default of Educated Solutions on the record. Filing 36. Thus, further references to "Defendants" in this Memorandum and Order—other than in quotations—are to Gilbertson and Century Traffic.

On December 3, 2025, Plaintiffs filed the Motion for TRO now before the Court. Filing 25.[2] Plaintiffs seek the same relief on the TRO and on a subsequent preliminary injunction. Filing 25 at 2–3. Plaintiffs assert that although they have asserted six causes of action, "[i]njunctive relief is warranted based on [Plaintiffs'] likelihood of success on (1) Gilbertson's breach of contract; and (2) Defendants' tortious interference with [Plaintiffs'] contracts," that is, Counts I and II of their Complaint. Filing 25 at 9. Because neither claim on which Plaintiffs seek injunctive relief at this point names Educated Solutions as a Defendant, Plaintiffs are not seeking and cannot be granted a TRO against Educated Solutions, even if Educated Solutions has defaulted and a default judgment is ultimately entered against Educated Solutions.

As injunctive relief, Plaintiffs request that the Court order:

A.    Gilbertson to comply with his restrictive covenants from his Proprietary Matters Agreement, including: (1) immediately ceasing any direct or indirect solicitation of [Plaintiffs'] employees with whom he worked or had contact during the twelve months preceding his departure from Forward Traffic; (2) immediately ceasing any direct or indirect solicitation or servicing of [Plaintiffs']

---

[1] The Motion to Dismiss will be resolved in a separate order.

[2] On the same date, Plaintiffs filed a Motion for Expedited Discovery requesting leave to conduct expedited discovery to prepare for a preliminary injunction hearing. Filing 26. That Motion is assigned to a magistrate judge and will not be resolved in this Memorandum and Order.

customers with whom he had had personal contact and did business with during the twelve (12) month period immediately prior to his separation from Forward Traffic; and (3) refraining from using or disclosing [Plaintiffs'] confidential and proprietary information.

      B.     Century Traffic, Educated Solutions, and Gilbertson to cease and refrain from any intentional interference with [Plaintiffs'] contractual relationships, including: (1) inducing [Plaintiffs'] employees (such as Gilbertson) to breach restrictive covenants or depart in violation of contractual obligations; and (2) targeting [Plaintiffs'] customer relationships through the use of [Plaintiffs'] confidential information or other improper means.

      C.     Preservation of evidence related to solicitations, customer communications, and any [of Plaintiffs'] confidential information in Defendants' possession, custody, or control, pending further order of the Court.

      D.     Such other and further relief as the Court deems just and proper to protect the [Plaintiffs'] contractual rights and business relationships.

Filing 25 at 3. The Court notes that the relief request in ¶ B quoted above exceeds the scope of the claims for breach of contract and tortious interference in the Complaint upon which the Motion for TRO is based, not least as to inclusion of an injunction against Educated Solutions who is not named in either claim. *See* Filing 1 (Counts I and II).

On December 4, 2025, the Court filed an Order Regarding Motion for Temporary Restraining Order and Preliminary Injunction addressing only the Motion for TRO. Filing 27 at 1. The Court then filed an Order Correcting Briefing Schedule on Motion for Temporary Restraining Order on December 5, 2025. Filing 29. The latter Order required Defendants to respond to the Motion for TRO not later than December 11, 2025, and required Plaintiffs to file any reply not later than December 15, 2025. Filing 29 at 1. It also stated the following:

      3.     Not later than Monday, December 15, 2025, the parties shall file notices to the Court on whether a hearing is necessary to the disposition of the Motion for TRO or whether the Motion for TRO can be submitted on written submissions without presentation of additional evidence or oral arguments. The Court will thereafter determine whether and when to set a hearing on the Motion for TRO.

Filing 29 at 1–2.

Gilbertson and Century Traffic filed their Opposition to Plaintiffs' Motion for a TRO on December 11, 2025. Filing 30. On December 15, 2025, Defendants filed a Notice Regarding Hearing on Motion for a TRO. Filing 31. In their Notice, Gilbertson and Century Traffic state, "[T]hey believe a hearing on the disposition of the Motion for TRO ('Motion') is not necessary, and the Motion may be submitted on written submissions without presentation of additional evidence or oral arguments." Filing 31 at 1 (citing NECivR 7.1(e)). On December 15, 2025, Plaintiffs filed their Reply Brief in Support of Motion for Temporary Restraining Order. Filing 33. On December 15, 2025, Plaintiffs also filed a Notice Regarding Oral Argument on Plaintiffs' Motion for Temporary Restraining Order. Filing 34. Unlike Gilbertson and Century Traffic, Plaintiffs assert, "In light of the Defendants' arguments in opposition to Plaintiffs' Motion for Temporary Restraining Order, Plaintiffs believe that presentation of oral argument and evidence will be instructive for the Court's eventual ruling." Filing 34 at 1. However, they also state, "If the Court concludes—based on the briefs—that a temporary restraining order should be granted, Plaintiff agrees that oral argument is unnecessary." Filing 34 at 1.

The local rule on motion practice states in part,

In general the court does not allow oral argument or evidentiary hearings on motions. The party requesting oral argument or an evidentiary hearing must state (1) why argument or a hearing is necessary and (2) an estimate of the time required for the argument or hearing.

NECivR 7.1(e). It states further,

Unless the court grants leave for oral argument, a motion is submitted on the briefs and any evidence filed when the time limit specified in Nebraska Civil Rule 7.1(c) expires.

NECivR 7.1(g). Although Plaintiffs have asserted why in their view argument or a hearing is necessary as required by NECivR 7.1(e)(1), the Court is not persuaded "that the presentation of oral argument and evidence will be instructive for the Court's eventual ruling." Filing 34 at 1.

Specifically, in the six weeks between the filing of Plaintiffs' Complaint and the filing of their Motion for TRO, apparently no different or additional facts came to Plaintiffs' attention, because their Motion for TRO and their Reply in Support of the Motion for TRO rely on the Complaint and the exhibits attached to it. *See* Filing 25 *passim*; Filing 33 *passim*. If Plaintiffs had additional evidence to present, they should have submitted it with their Reply after Gilbertson and Century Traffic pointedly argued in their Opposition that Plaintiffs had not submitted sufficient evidence to warrant a TRO. *See, e.g.,* Filing 30 at 1 ("In fact, Plaintiffs did not submit any specific evidence to support their request for a TRO. They did not file any witness declarations, nor any additional documents, to offer any specifics as to their harm or need for emergency relief."). Plaintiffs added nothing more in their Reply than an argument that the Motion for TRO is supported by a declaration verifying the allegations in the Complaint. Filing 33 at 2, 4 n.1 (citing Dec. of Lewitzke (Filing 22-1)). Thus, the Court sees no reason to afford Plaintiffs another opportunity to support their Motion for TRO with any additional evidence. Furthermore, the Court finds that the parties' briefs sufficiently address their arguments and supporting authority for the Court to rule on the Motion for TRO without oral argument. *Contra* Filing 34 at 1 (asserting that oral argument "will be instructive"). Consequently, the Court did not hold oral argument or an evidentiary hearing on the Motion for TRO.

## II.  LEGAL ANALYSIS

### A.  TRO Standards

Rule 65 of the Federal Rules of Civil Procedure provides, in pertinent part, "The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney." Fed. R. Civ. P. 65(b)(1). Rule 65(b) imposes significant requirements for a TRO issued without notice. Fed. R. Civ. P. 65(b)(1)–(3); *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) (noting that there is a material difference between a TRO and a preliminary injunction in the allowed duration and the requirement of notice). However, in this case, the TRO is being considered only after notice to Defendants and briefing by the parties.

Rule 65(b) does not identify the standards that the Court must apply in deciding whether to grant a request for a TRO. *See generally* Fed. R. Civ. P. 65(b). The Eighth Circuit Court of Appeals has filled the gap by explaining, "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Bio Gen LLC v. Sanders*, 142 F.4th 591, 600 (8th Cir. 2025) (bracketed numbers inserted) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), and also citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)); *see also Schmitt v. Rebertus*, 148 F.4th 958, 966 (8th Cir. 2025) ("In deciding whether to grant preliminary injunctive relief, courts consider the four *Dataphase* factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties' litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." (quoting *Dataphase Sys., Inc.*, 640 F.2d at

114)).[3] No single factor is determinative or dispositive. *Schmitt*, 148 F.4th at 966. Thus, "the court

should balance all the factors in considering whether the injunction should be granted." *Ng v. Bd.*

*of Regents of Univ. of Minnesota*, 64 F.4th 992, 997 (8th Cir. 2023).

The pertinent factors must be considered in the context of certain over-arching principles.

First, "[a] preliminary injunction [or TRO] is an extraordinary remedy never awarded as of right."

*Winter*, 555 U.S. at 24. Second, because a TRO or preliminary injunction is an extraordinary

remedy, "the party seeking a preliminary injunction bears the burden of establishing the necessity

of the remedy." *Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023) (citing *Gen. Motors*

*Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009)), *cert. denied*, 144 S. Ct. 1350

(2024). Third, the "primary function" of a TRO or preliminary injunction "is to preserve the status

quo until a court may grant full relief upon a final hearing." *Wilbur-Ellis Co., LLC v. Jens*, 139

F.4th 608, 611 (8th Cir. 2025). To put it another way, the purpose of preliminary injunctive relief

"is not to give the movant the ultimate relief he seeks." *Lindell*, 82 F.4th at 618. Indeed,

"[r]equiring [the defendant] to take affirmative action . . . before th[e] issue has been decided on

the merits goes beyond the purpose of a preliminary injunction." *Tumey*, 27 F.4th at 665 (quoting

*Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co*., 997 F.2d 484, 490 (8th Cir. 1993)).

---

[3] Courts in this Circuit have for decades called the considerations for determining whether to grant a TRO or a preliminary injunction the "*Dataphase* factors," set out in *Dataphase Sys., Inc. v. C.L. Sys., Inc*., 640 F.2d 109 (8th Cir. 1981) (en banc). The much more recent statements of the pertinent factors by the Supreme Court in *Winter*, as quoted in *Bio Gen*, while identifying the same considerations, give them sufficiently different definition to warrant reference to the "*Winter* factors" rather than the "*Dataphase* factors." *Compare Winter*, 555 U.S. at 20 (as quoted in *Bio Gen*, 142 F.4th at 600, in the body of this decision), *with Dataphase*, 640 F.2d at 114 (as quoted in *Schmitt*, 148 F.4th at 966, as set out in the body of this decision). However, even since *Winter*, the Eighth Circuit Court of Appeals has generally persisted in relying on the pertinent factors as the "*Dataphase* factors." *See, e.g*., *Schmitt*, 148 F.4th at 964; *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist*., 83 F.4th 658, 668 (8th Cir. 2023); *but see Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342–1343 (8th Cir. 2024) (quoting the factors from *Winter*, 555 U.S. at 20, then citing *Dataphase Sys*., 640 F.2d at 114, for the "same factors," and referring to the "*Winter/Dataphase* factors").

The Court turns to consideration of the *Winter/Dataphase* factors in this case in the context of these guiding principles.

### B. Consideration of the *Winter/Dataphase* Factors

*1. Likelihood of Success*

a. The Parties' Arguments

In support of the first *Winter/Dataphase* factor, Plaintiffs argue that they are likely to succeed on the merits of their breach of contract claim against Gilbertson because they are likely to satisfy all the elements of such a claim under Nebraska law. Filing 25 at 10. They assert that the Proprietary Matters Agreement is valid and enforceable and that they performed all their obligations under that Agreement, while Gilbertson violated and continues to violate his nonsolicitation restrictions in the Proprietary Matters Agreement. Filing 25 at 10. They allege Gilbertson's breaches are the following:

> Gilbertson has (1) contacted employees of [Plaintiffs] and solicited them to join Century Traffic in violation of the Proprietary Matters; (2) solicited and serviced customers of [Plaintiffs] in violation of the Proprietary Matters Agreement; and (3) used [Plaintiffs'] Confidential Information for the purpose of soliciting [Plaintiffs'] employees and customers.

Filing 25 at 10. Plaintiffs assert, "As a result of these breaches, Plaintiffs' have been irreparably harmed." Filing 25 at 10.

Likewise, Plaintiffs assert that they are likely to succeed on their claim of tortious interference with a business relationship against Century Traffic. Filing 25 at 10–11. They argue,

> Here, the Proprietary Matters Agreement between [Plaintiffs] and Gilbertson (and other [of Plaintiffs'] employees) are enforceable contracts, and Century Traffic knew of the existence of agreements between [Plaintiffs] and [Plaintiffs'] employees, particularly Gilbertson. Century Traffic induced Gilbertson to breach his Proprietary Matters Agreement and his fiduciary duties by using Gilbertson to solicit key [Plaintiffs'] employees and customers for their own gain. Further, Century Traffic induced Gilbertson to breach his Proprietary Matters

12

Agreement by improperly receiving, accessing, and/or using [Plaintiffs'] confidential information.

Filing 25 at 11 (footnote omitted); Filing 25 at 11 n.2 (asserting that Century Traffic knew of Gilbertson's contractual obligations by at least June 12, 2025, citing Filing 1 at 10 (¶ 51), which alleges that Plaintiffs sent a copy of the June 12, 2025, cease-and-desist letter to Century Traffic).[4]

In keeping with their theme that the Motion for TRO is "unsupported by any specific, admissible evidence," Filing 30 at 2, Gilbertson and Century Traffic argue that Plaintiffs have made no showing of likelihood of success with "actual evidence, not argument," Filing 30 at 6. Indeed, Defendants argue, "The Plaintiffs fail to show that they are likely to succeed on the merits because they do not offer any proof of what the Defendants *actually did* to show that Plaintiffs have a fair chance of success on the merits, nor do they offer any proof of their supposed damages." Filing 30 at 6 (emphasis in the original). Defendants contend that the elements of the breach of contract and the tortious interference claims require more than the speculation, conjecture, and inadmissible statements offered by Plaintiffs to demonstrate a likelihood of success on the merits. Filing 30 at 7. More specifically, Gilbertson and Century Traffic argue,

> Plaintiffs' submissions to this Court fail to identify even the most basic details about these allegations: the dates of the meetings, the names of the Century Traffic employees who made such statements, the employees whom Mr. Gilbertson allegedly contacted, the dates of contact, and the content of the conversations which Mr. Gilbertson allegedly had with RSS employees are all missing. Plaintiffs do not provide the Court with any of the key specifics supporting these general, unsupported allegations. Without a specific, concrete factual basis to substantiate

---

[4] In support of likelihood of success on the tortious interference claim, Plaintiffs also assert that "Defendants have in concert induced or attempted to induce other [of Plaintiffs'] employees to breach their contractual obligations to [Plaintiffs]." Filing 25 at 11. However, the tortious interference claim in Count II, upon which Plaintiffs relied for a TRO, is only against Century Traffic. Filing 1 at 11. Plaintiffs did not rely on their "civil conspiracy" claim, which is against "all Defendants," as the basis for a TRO. Thus, the Court disregards arguments in Plaintiffs' briefs related to any such conspiracy in deciding whether or not to grant a TRO. Even if the Court were to consider such arguments, the Court would find that they suffer from the same evidentiary deficiencies as the arguments about the breach of contract and tortious interference claims.

the Plaintiffs' claims for relief, the Plaintiffs fail to show that they will succeed on the merits.

Filing 30 at 7–8. Defendants argue further that Plaintiffs' moving papers are silent on key issues, such as the impact of lost clients or lost vendors, the loss of profits, the loss of reputation and goodwill, the loss of employees, or the identity of a single customer or business opportunity allegedly lost since Gilbertson joined Century Traffic. Filing 30 at 8.

      b.  Requirements to Show Likelihood of Success

The Eighth Circuit has explained,

> "While no single [*Dataphase*] factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (internal quotation marks and citations omitted). [The movant] "must demonstrate that [he] has a 'fair chance' of prevailing on the merits." *Sleep Number Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022). "To show a fair chance of prevailing, [the movant] must show that [his] claims provide fair ground for litigation, but [he] need not show that [he] has a greater than fifty per cent likelihood of success." *Id.* at 1016–17 (internal quotation marks and citations omitted).

*Schmitt*, 148 F.4th at 966 (second and fourth alterations by this Court).

It follows that likelihood of success on a claim depends upon the likelihood that the movant can prove the elements of its claims. The Nebraska Supreme Court recently explained, "[I]n order to recover in an action for breach of contract, the plaintiff must plead and prove [1] the existence of a promise, [2] its breach, [3] damage, and [4] compliance with any conditions precedent that activate the defendant's duty." *Morris v. Dall*, 26 N.W.3d 304, 312 (Neb. 2025) (bracketed numbers inserted) (citing *Henriksen v. Gleason*, 643 N.W.2d 652 (Neb. 2002)). The Nebraska Supreme Court has also explained, "To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified

14

intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Dick v. Koski Pro. Grp., P.C.*, 950 N.W.2d 321, 377 (Neb. 2020), *opinion modified on denial of reh'g*, 953 N.W.2d 257 (Neb. 2021).

### c.   Plaintiffs' Fail to Show Likelihood of Success

The Court finds that Plaintiffs cannot show any "fair chance of prevailing" or "fair ground for litigation," even if they are not required to show a better than fifty percent chance of prevailing. *Schmitt*, 148 F.4th at 966. As Gilbertson and Century Traffic argue, the most critical flaws— although not the only ones—are lack of admissible evidence on any "breach" of contract by Gilbertson or any "interference" on the part of Century Traffic. *See Morris*, 26 N.W.3d at 312 (requiring proof of a "breach" of contract on a breach of contract claim); *Dick*, 950 N.W.2d at 377 (requiring proof of "an unjustified intentional act of interference" on a tortious interference claim).

It is true that Plaintiffs allege that Gilbertson breached his restrictive covenants by immediately working for a competitor performing the same or substantially the same duties as he did for Forward Traffic; contacted Plaintiffs' employees and solicited them to join Century Traffic; solicited and serviced Plaintiffs customers; "[u]pon information and belief," used Plaintiffs' confidential information for the purpose of soliciting Plaintiffs' employees and customers; and with Century Traffic engaged Educated Solutions to solicit and recruit Plaintiffs' employees. Filing at 8–9 (¶¶ 38, 44, 46, and 48). It is also true that Plaintiffs allege that Century Traffic interfered with business relations by seeking out Gilbertson "for the sole purpose of obtaining and securing the confidential and proprietary knowledge he obtained from his employment with Plaintiffs"; discussed a scheme to target Plaintiffs' employees and customers with the purpose of

driving Plaintiffs out of business in Wisconsin; hired Gilbertson in furtherance of that scheme; contacted and solicited Plaintiffs' employees to join Century Traffic; and engaged Educated Solutions to solicit and recruit Plaintiffs' employees. Filing 1 at 8–9 (¶¶ 40, 42, 43, 44, and 47).

What is lacking is any evidence to support any of these allegations. The Complaint states not one nonconclusory fact and cites no evidence plausibly supporting any of the allegations. The "verification" of the allegations in the Complaint by Nick Lewitzke, a Regional Director for RSS, states that "[t]he facts stated [in his declaration] are true and correct and are based on [his] personal knowledge" and also states that "the allegations contained [in the Complaint] are true and correct based on my personal knowledge." Filing 22-1 at 1 (¶¶ 1, 3). However, he states not one fact demonstrating how he has personal knowledge of any statements by Century Traffic or Gilbertson to poach employees, nor does he identify a single employee that was poached, a single customer lost, or any confidential information obtained by Century Traffic from Gilbertson. Filing 22-1 *passim*. Thus, the allegations in the Complaint for which Lewitzke purportedly vouches are at best hearsay and at worst conjecture and speculation, but they are not admissible evidence supporting a likelihood of success in proving any breach of contract or tortious interference. *Schmitt*, 148 F.4th at 966.

The failure to establish this "most significant" factor weighs heavily against issuing a TRO. *Id.* (identifying likelihood of success as the "most significant" factor); *see also Ng*, 64 F.4th at 997 (stating that "the court should balance all the factors in considering whether the injunction should be granted").

    *2. Irreparable Harm*

The next *Winter/Dataphase* factor the Court will consider is whether the movant "is likely to suffer irreparable harm in the absence of [injunctive] relief." *Bio Gen*, 142 F.4th at 600 (quoting *Winter*, 555 U.S. 20); *see also Schmitt*, 148 F.4th at 966 (stating that a movant must demonstrate "the threat of irreparable harm to the movant" (quoting *Dataphase Sys., Inc.*, 640 F.2d at 114).

    a. The Parties' Arguments

Plaintiffs argue that they will suffer irreparable harm in the absence of a TRO because courts have recognized that the unauthorized disclosure of confidential business information may cause irreparable harm. Filing 25 at 11. They contend that the disclosure of their confidential and trade secret information to a direct competitor would irreparably harm Plaintiffs' competitive standing and goodwill, and result in loss of customers and employees. Filing 25 at 12. They assert that the loss of goodwill and harm to employee and customer relationships can never be fully calculated or recovered by monetary damages. Filing 25 at 12. Gilbertson and Century Traffic assert that Plaintiffs cannot establish this factor because monetary damages could compensate them for their alleged losses. Filing 30 at 10. Furthermore, they assert,

> Here, Plaintiffs have not even identified a lost customer, vendor or any loss of reputation/goodwill. They offer nothing to show they have, in fact, been harmed in any way in the past six months. On that basis alone, the Court could find there is no irreparable harm and deny this motion.

Filing 30 at 10. In reply, Plaintiffs argue that the record establishes an imminent and continuing threat to their goodwill, confidential information, and contractual relationships, which are all harms that the Eighth Circuit has recognized as irreparable. Filing 33 at 2; *see also* Filing 33 at 6.

    b. Requirements to Show Irreparable Harm

The Eighth Circuit recently explained,

A plaintiff seeking a preliminary injunction must show, among other things, that it is likely to suffer irreparable harm. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "[T]o demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). Even where a permanent injunction may be appropriate relief after a final decision on the merits, preliminary injunctive relief is not necessarily warranted if any interim harm can be remedied in a final judgment. *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (per curiam). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

*Denali Summit, LLC v. Union Elec. Co.*, 158 F.4th 896, 899 (8th Cir. 2025). The Eighth Circuit has also stated, "A party is not required to prove with certainty the threat of irreparable harm, but it must prove that irreparable harm is likely in the absence of an injunction." *Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904, 927–28 (8th Cir. 2025) (cleaned up) (quoting *Sleep No. Corp.*, 33 F.4th at 1018, in turn quoting *Winter*, 555 U.S. at 22).

        c.    Plaintiffs Fail to Show Irreparable Harm

The Court first notes that the problem with Plaintiffs' showing on this factor is not that they have failed to identify any irreparable harms. As to loss of trade secrets or confidential information, the Eighth Circuit has explained,

> "[I]t is not the number of trade secrets taken that determines whether the threat of irreparable harm exists. The fact that a single trade secret may be disclosed is enough." *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 503 (5th Cir. 1982). A single trade secret suffices because "once a trade secret is disclosed, its secrecy is lost forever." *APAC Teleservices, Inc. v. McRae*, 985 F. Supp. 852, 866 (N.D. Iowa 1997) (Melloy, C.J.).

*Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024). Intangible losses, such as loss of goodwill and reputation, may also be irreparable harms, although the threat of such losses must be

18

more than speculative and the evidence must be "sufficiently clear and present" to require equitable relief. *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 952 (8th Cir. 2023). On the other hand, economic loss, such as lost profits and lost customers, are compensable with money damages and are not irreparable harms. *Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587, 597 (8th Cir. 2022). Thus, Plaintiffs' allegedly irreparable harms from injury to their business from Gilbertson's conduct in the form of loss of competitive business advantage, opportunity, and/or expectancy, and competitors' unfair advantage in the marketplace are not sufficient. *See, e.g.*, Filing 1 at 11 (¶ 64).

The most critical flaw as to this factor is not the failure to identify irreparable harms but is again the lack of admissible evidence to support a showing of irreparable harm. Plaintiffs allege irreparable harm by alleging, "Upon information and belief, Gilbertson has also used [Plaintiffs'] Confidential Information for the purpose of soliciting [Plaintiffs'] employees and customers." *See, e.g.,* Filing 1 at 9 (¶ 46). The loss of such confidential information can be irreparable harm. *Cigna Corp.*, 103 F.4th at 1346. Plaintiffs also allege irreparable harm in the form of loss of goodwill and damage to their reputations. Filing 1 at 12 (¶ 73). This too can be irreparable harm. *H&R Block, Inc.*, 58 F.4th at 952. However, the "verification" in Lewitzke's Declaration of the latter allegations in the Complaint, Filing 22-1 at 1 (¶¶ 1, 3), does not establish any factual support to raise such allegations beyond speculation. *H&R Block, Inc.*, 58 F.4th at 952 (explaining that loss of goodwill and reputation must be based on evidence that is sufficiently clear and present to require equitable relief). Lewitzke states not one fact demonstrating how he has personal knowledge of actual disclosure or the threat of actual disclosure of any confidential information or any loss of goodwill or damages to Plaintiffs' reputation. Filing 22-1 *passim*. The allegations of irreparable harm in the

Complaint are unsupported by any factual allegations that make them plausible rather than conclusory and speculative. Thus, the allegations in the Complaint are at best hearsay and at worst conjecture and speculation, but they are not admissible evidence demonstrating irreparable harm showing "a clear and present need for equitable relief" or demonstrating that "irreparable harm is likely in the absence of an injunction." *Iowa Migrant Movement for Just.*, 157 F.4th at 927–28 (internal quotation marks omitted).

Again, "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Denali Summit, LLC*, 158 F.4th at 899 (internal quotation marks omitted). Thus, the failure to show this factor not only weighs against issuance of a TRO but is fatal to it.

### 3. Other Pertinent Factors

Where Plaintiffs cannot demonstrate either likelihood of success or irreparable harm, the Court finds it unnecessary to consider in detail the remaining *Winter/Dataphase* factors involving the balance of equities and the public interest. *Bio Gen LLC*, 142 F.4th at 600; *Schmitt*, 148 F.4th at 966. These remaining factors weigh insufficiently in Plaintiffs' favor—if at all—to offset the failure to establish the more important factors. *Ng*, 64 F.4th at 997 (stating that "the court should balance all the factors in considering whether the injunction should be granted").

However, the Court finds it appropriate to consider one other factor not enumerated among the *Winter/Dataphase* factors that weighs against a TRO in this case because it goes to whether this is the sort of case in which the "extraordinary remedy" of a TRO is appropriate. *Winter*, 555 U.S. at 24 (explaining that the "extraordinary remedy" of a TRO or preliminary injunction should never be awarded as of right). That factor is "diligence" of the movant.

Both the United States Supreme Court and the Eighth Circuit Court of Appeals have recognized the importance of diligence in seeking injunctive relief. "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018); *Ng*, 64 F.4th at 997 (explaining that unreasonable delay "is a sufficient basis to deny" a preliminary injunction); *see also Hotchkiss v. Cedar Rapids Cmty. Sch. Dis*t., 115 F.4th 889, 894 (8th Cir. 2024) (citing *Benisek* and *Ng*). The Court observed in its original order setting a briefing schedule on the Motion for TRO that while the delay between the filing of the Complaint and the filing of the Motion for TRO is about six weeks, not several months, there do not appear to be any different or additional facts that came to Plaintiffs' attention between the filing of the Complaint and the Motion for TRO, as indicated in the statement of the factual allegations above. Filing 27 at 4. In other words, there does not appear to the Court to be any reason that Plaintiffs could not have filed their Motion for TRO at the same time as or immediately after they filed their Complaint. Filing 27 at 4. Furthermore, the allegations show that it has been several months— since June at the latest until now—since Plaintiffs became aware of the conduct that is the basis for their Complaint and Motion for TRO. Filing 27 at 4. These circumstances suggest a lack of diligence and undermine the urgency of the need for a TRO. Filing 27 at 4. The Court suggested that this delay may not be sufficient to warrant denial of a TRO, but it was more than sufficient for the Court to decline to enter a TRO *ex parte* rather than ruling on the Motion for TRO only after providing Defendants with the opportunity to brief the matter. Filing 27 at 4.

Gilbertson and Century Traffic expressly argue in their Opposition that Plaintiffs' Motion for TRO is untimely and that Plaintiffs' lack of diligence demonstrates that they have not been irreparably harmed. Filing 30 at 1, 8. Plaintiffs' Reply argues that Defendants' timeliness argument

"mischaracterizes the chronology." Filing 33 at 4. Plaintiffs assert that the filing of their Complaint on October 17, 2025, was prompted by an "escalation" of the solicitation campaign in October when Educated Solutions solicited every Forward Traffic employee with a LinkedIn profile. Filing 33 at 4. Plaintiffs also assert that Century Traffic responded to their cease-and-desist letter by offering a "false" narrative that Gilbertson was being employed as a "trainer." Filing 33 at 4. Plaintiffs contend that during the period between the filing of their Complaint and the filing of their Motion for TRO, they were justifiably focused on responding to Defendants' Motion to Dismiss. Filing 33 at 4 n.4. Plaintiffs argue that their Motion for TRO filed on December 3, 2025, was filed "promptly" after the alleged escalation of the employee poaching scheme, so that this is not a case of "sleeping on rights," but a case in which they made a "measured but timely" application for a TRO. Filing 33 at 4.

The Court remains unconvinced of Plaintiffs' diligence, and their arguments that their Motion for TRO was timely do more to confirm the Court's view than to change it. Plaintiffs have only conclusory allegations that the description of Gilbertson as a "trainer" for Defendants was "false" and that an "escalation" of solicitation occurred in October, not admissible evidence or factual allegations plausibly supporting those allegations. The Court also reiterates that there does not appear to be any reason that the Motion for TRO could not have been filed at about the same time as the Complaint was filed where the Motion for TRO is based on allegations in the Complaint. Filing 27 at 4. Defendants' Motion to Dismiss, which Plaintiffs offer as an excuse for their delay in filing the Motion for TRO, was filed November 10, 2025, three-and-a-half weeks after the Complaint was filed. Thus, the Motion to Dismiss does not explain why the Motion for TRO was not filed with the Complaint or shortly after the Complaint was filed. The Court

concludes that the Motion for TRO was not "timely" under the circumstances, which undercuts the urgency of the need for "extraordinary relief," so that Plaintiffs' lack of diligence further justifies denial of the Motion for TRO. *See Benisek*, 585 U.S. at 159; *Ng*, 64 F.4th at 997.

## III. CONCLUSION

On this record, Plaintiffs have failed to carry their burden of establishing the necessity of a TRO. See *Lindell*, 82 F.4th at 618. This is simply not a case in which Plaintiffs have shown that the "extraordinary remedy" of a TRO should be awarded. *Winter*, 555 U.S. at 24.

Upon the foregoing,

IT IS ORDERED that the part of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Filing 25, seeking a temporary restraining order is denied.

Dated this 19th day of December, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge