IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROAD SAFETY SERVICES, INC., and FORWARD TRAFFIC AND MARKING, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> MICHAEL GILBERTSON and CENTURY TRAFFIC, LLC, <br><br> Defendants. | **8:25CV622** <br><br> **MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(2) OR, IN THE ALTERNATIVE, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A), AND PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING MOTION FOR EXPEDITED DISCOVERY** |

This matter is before the Court on Defendants Michael Gilbertson's and Century Traffic, LLC's (Century Traffic's), motion, Filing 19, seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, in the alternative, requesting that the Court transfer the case to the United States District Court for the Eastern District of Wisconsin (Milwaukee Division) pursuant to 28 U.S.C. § 1404(a). It is also before the Court on Plaintiffs' Objections to Magistrate Judge's Order Denying Motion for Expedited Discovery. Filing 40. For the reasons stated below, the Court grants Defendants' motion in part and denies the motion in part and overrules Plaintiffs' Objections.

## I.  INTRODUCTION

### A.  Factual Background

On a Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the facts are drawn "not [from] the pleadings alone, but [also from] affidavits and exhibits supporting or opposing the motion." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). Similarly, with respect to a motion to transfer, a court will draw its factual basis from allegations

1

in the Complaint and other evidence submitted by the parties. *Bhd. of Maint. of Way Employes Div./IBT v. Union Pac. R.R. Co.*, 485 F. Supp. 3d 1048, 1053 n. 1 (D. Neb. 2020) (citing *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-CV-00332-SRB, 2019 WL 3892873, at *1 (W.D. Mo. Aug. 19, 2019) ("[W]hen reviewing a motion to transfer, a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party.")). Two declarations were included in the Index of Evidence that Defendants submitted with the Motion to Dismiss that is now before the Court: the Declaration of Michael Gilbertson, Filing 21-1, and the Declaration of William Sturm, Filing 21-2, who is the Chief Operating Officer of Century Traffic. Filing 21. Likewise, Plaintiffs included the Declaration of Nick Lewitzke, who is the Regional Director of Road Safety Services, Inc. (RSS), with their response brief. Filing 22-1. The facts that follow are drawn from the Complaint, the two exhibits attached to the Complaint, and the three declarations. The Court applies the following factual background to both Defendants' Motion and Plaintiffs' Objections.

According to the Lewitzke Declaration, Plaintiff RSS "utilizes a variety of operating companies to provide pavement marking, rumble, and traffic control services throughout the United States." Filing 22-1 at 1 (¶ 4). Plaintiff Forward Traffic and Marking, LLC (Forward Traffic), is purportedly one of RSS's operating companies and is a "wholly owned subsidiary of RSS." Filing 22-1 at 1 (¶ 4). The Complaint alleges that Forward Traffic is "Wisconsin's largest traffic control and pavement marking company" and is involved in "every aspect of traffic control, pavement marking installation and sign installation." Filing 1 at 3 (¶ 11). According to the Complaint,

> In carrying out their business activities, and to maintain their competitive position in the marketplace, Plaintiffs create and maintain confidential and proprietary information about their clients and services, which includes customized solutions developed for specific client needs, information about client-specific project

specifications and pricing, historical pricing and preference data on client projects and accounts, and strategies and business plans concerning target areas for growth and new business with existing clients.

Filing 1 at 3 (¶ 15).

Defendant Century Traffic is allegedly a Wisconsin-based competitor of Forward Traffic. *See* Filing 1 at 4 (¶ 21); Filing 21-2 at 1 (¶ 3). According to the Sturm Declaration, "Century Traffic and its predecessors have worked in Wisconsin, Illinois, and Minnesota," but "Century Traffic has never done business of any kind in the state of Nebraska." Filing 21-2 at 2 (¶¶ 5–6). The Sturm Declaration avers *inter alia* that Century Traffic "is not licensed to do business in Nebraska," "has never sent Century Traffic's customers or employees to Nebraska for business or for any other reason," "has never paid a material supplier nor an equipment supplier located in Nebraska," and "has never made or directed a payment to any Nebraskan entity of any kind." Filing 21-2 at 2 (¶ 7, 9–11).

Defendant Gilbertson is a Wisconsin resident and current employee of Century Traffic. Filing 1 at 1 (¶¶ 2–3); Filing 21-1 at 1 (¶¶ 1, 28). The Gilbertson Declaration avers that he is currently "employed as a trainer for Century Traffic" in Wisconsin.[1] Filing 21-1 at 4 (¶ 28, 30). According to the Gilbertson Declaration, "In addition to being [his] current employer, [Gilbertson] also worked for Century Traffic in a similar capacity from 1996 until October 2017." Filing 21-1 at 2 (¶ 13). Gilbertson declares, "In October of 2017, I left Century Traffic and began employment with [RSS's] predecessor companies (starting with Sir-Lines-A-Lot)." Filing 21-1 at 2 (¶ 14). According to Gilbertson, "Sir-Lines-A-Lot was eventually converted to RSS in approximately October of 2022," and Gilbertson purportedly "worked for RSS (and its predecessor companies)

---

[1] The Complaint states that "Century Traffic's allegation that Gilbertson is a 'Trainer' is false and was made for the purpose of concealing Century Traffic's ulterior motive to drive Plaintiffs out of business pursuant to the Scheme." Filing 1 at 10 (¶ 53).

from October of 2022 until approximately May of 2025." Filing 21-1 at 3 (¶¶ 17–18). Gilbertson declares that he "resigned from RSS and re-joined Century Traffic" in his current capacity as a "trainer" in May 2025. Filing 21-1 at 4 (¶¶ 28–29).

Gilbertson declares that he has "lived in Wisconsin for [his] entire life" and that "[t]he only time [he] [has] ever been to Nebraska was to drive through the state," although "[he] do[es] not recall when the last occasion was that [he] drove through Nebraska because it was so long ago." Filing 21-1 at 1 (¶¶ 3–4). The Gilbertson Declaration also states that Gilbertson has never "performed any work in Nebraska," "requested or contracted for services of any kind that would occur in Nebraska," or, as far as he knows, "sent a payment of any kind to Nebraska." Filing 21-1 at 2 (¶¶ 5–11). Additionally, Gilbertson declares that "[d]uring the period when [he] worked for RSS and its predecessors, from October 2017 until May 2025, [he] performed work on behalf of RSS in many different states including Wisconsin, Minnesota, Texas, Arizona, and Virginia" but "never performed any work—for RSS, any of its subsidiaries or predecessors, or for any other company—in Nebraska." Filing 21-1 at 3 (¶ 21).

According to the Gilbertson Declaration, "As part of [Gilbertson's] employment with RSS, [he] was allowed to purchase certain shares of equity in an RSS affiliate company." Filing 21-1 at 3 (¶ 22). This RSS affiliate company is known as HP RSS Topco, LP (HP RSS Topco). Filing 1 at 6 (¶ 31). According to the Lewitzke Declaration, the option to purchase equity in HP RSS Topco was "granted and administered by RSS." Filing 22-1 at 2 (¶¶ 12–13). The Lewitzke Declaration states that, on or about April 15, 2025, "Gilbertson executed the Proprietary Matters Agreement" for purposes of receiving HP RSS Topco equity. *See* Filing 22-1 at 4 (¶¶ 16–17). According to Gilbertson, "[he] did not receive anything in exchange for signing the April 2024 'proprietary information agreement' with [his] employer at the time, RSS. [Gilbertson's] pay, compensation,

4

benefits did not change positively or negatively. Nor did any of [his] job responsibilities change in exchange for (or even at the same time as) signing the proprietary information agreement."[2] Filing 21-1 at 4 (¶ 26). However, the Lewitzke Declaration states that "Gilbertson's execution of the Proprietary Matters Agreement was a prerequisite for [Gilbertson's] receipt of equity in [HP RSS Topco]."[3] The Lewitzke Declaration also avers,

> Gilbertson received the following benefits for signing the Proprietary Matters Agreement: (1) eligibility for equity ownership in RSS, (2) a temporary forbearance in the Plaintiffs' right to terminate his employment for failing to sign the Proprietary Matters Agreement, and (3) continued access to the Plaintiffs' confidential and proprietary information.

Filing 22-1 at 4 (¶ 18). Additionally, the Proprietary Matters Agreement states,

> NOW, THEREFORE, consistent with the above recitals, which are hereby incorporated in this Agreement by this reference, and in consideration of [Gilbertson's] employment by ["Road Safety Services, Inc. and its Subsidiaries"] and the continuation thereof, and to induce [RSS and its subsidiaries] to employ [Gilbertson], continue [Gilbertson's] employment, and to allow [Gilbertson] access to and use of its confidential and proprietary information, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, [RSS and its subsidiaries] and [Gilbertson] agree [to the following content contained in the Proprietary Matters Agreement].

Filing 1-1 at 2. According to the Complaint, Gilbertson also executed "'Annex A' to HP RSS Topco, LP's Amended Restated Limited Partnership Agreement" on April 15, 2024, "in exchange for equity in HP RSS Topco." Filing 1 at 6 (¶ 31); *see* Filing 22-1 at 4 (¶ 16).

Relevant here, the Complaint alleges that "[t]o protect Plaintiffs' competitive business interests," Gilbertson expressly agreed to post-employment non-solicitation and confidentiality obligations by executing the Proprietary Matters Agreement. *See* Filing 1 at 6 (¶ 32) (citing Filing

---

[2] Although the April 2024 agreement is referred to as a "proprietary information agreement" by Gilbertson, the Court understands the referenced agreement to be the Proprietary Matters Agreement. Filing 21-1 at 3–4 (¶¶ 25–26).

[3] The Court understands the Lewitzke Declaration's reference to "equity in RSS" to refer to "equity in HP RSS Topco," not the plaintiff RSS. *See* Filing 22-1 at 4 (¶ 17); Filing 1 at 6 (¶ 31).

1-1 at 5–6)). The Proprietary Matters Agreement also contains sections on governing law and jurisdiction and venue. Filing 1-1 at 8. The Proprietary Matters Agreement states,

> c.     *Governing Law*. This Agreement shall be governed by and construed in accordance with the laws of the State of Nebraska applied without reference to principles of conflict of laws.
>
> d.     *Jurisdiction and Venue*. Employee hereby expressly consents to personal jurisdiction and exclusive venue of the state and federal courts located in the State of Nebraska for any lawsuit that arises from or relates to this Agreement.

Filing 1-1 at 8 (¶ 15). Annex A similarly contains restrictive covenants that include post-employment non-competition obligations. Filing 1 at 7 (¶ 35).

Plaintiffs aver that Gilbertson has breached his restrictive covenants. Specifically, the Complaint alleges that Gilbertson resigned from Forward Traffic on May 30, 2025, and "immediately began employment with Century Traffic" "in the same line of work he had been performing for Forward Traffic." Filing 1 at 8 (¶¶ 38–39). In short, Plaintiffs allege that Gilbertson and Century Traffic engaged in a "scheme" meant to violate Gilbertson's restrictive covenants by targeting Plaintiffs' employees and customers with the goal of driving Plaintiffs out of business in Wisconsin. Filing 1 at 8–9 (¶¶ 37–46). Defaulted Defendant Educated Solutions Corp. (Educated Solutions) was allegedly engaged by Century Traffic and Gilbertson to solicit and recruit Plaintiffs' employees. Filing 1 at 9–10 (¶¶ 47–50); Filing 36. According to the Complaint, "neither Gilbertson nor Century Traffic have altered their unlawful conduct." Filing 1 at 10 (¶ 55).

## B. Procedural Background

Plaintiffs filed the Complaint on October 17, 2025. Filing 1. The Complaint raises six causes of action. Plaintiffs allege breach of contract against Gilbertson based on alleged breach of the restrictive covenants in the Proprietary Matters Agreement for their first cause of action. Filing 1 at 10–11 (¶¶ 58-65). Plaintiffs' second cause of action alleges tortious interference with contract against Century Traffic based on interference with Gilbertson's Proprietary Matters Agreement

with RSS and by aiding and inducing Gilbertson to breach his post-employment restrictive covenants. Filing 1 at 11-12 (¶¶ 67–74). Plaintiffs' third cause of action alleges unjust enrichment against Gilbertson and Century Traffic based on their improper receipt of a benefit from unauthorized use and impairment of rights and interests held by Plaintiffs, resulting in inequity to Plaintiffs and retention of benefits by Gilbertson and Century Traffic. Filing 1 at 13 (¶¶ 76–80). Plaintiffs allege breach of fiduciary duty and duty of loyalty against Gilbertson including breach of the duty not to divulge, disclose, expose, or misuse Plaintiffs' propriety information, or compete with Plaintiffs for Plaintiffs' fourth cause of action. Filing 1 at 13–14 (¶¶ 82–89). Plaintiffs' fifth cause of action alleges unfair competition against "all Defendants" by taking advantage of enjoying a "free ride" because Gilbertson and Century Traffic are not burdened with expenses incurred by Plaintiffs in developing their confidential information, relationships with employees and customers, and goodwill in the marketplace, and because Educated Solutions conspired with Gilbertson and Century Traffic to take advantage of such information, relationships, and goodwill. Filing 1 at 14–15 (¶¶ 91–96). Plaintiffs' final cause of action alleges a civil conspiracy against "all Defendants" to illegally solicit Plaintiffs' employees to leave Plaintiffs and work for Century Traffic in violation of their contractual agreements with Plaintiffs. Filing 1 at 15–16 (¶¶ 98–104).

On November 11, 2025, Century Traffic and Gilbertson filed a Motion to Dismiss or, in the Alternative, to Transfer Venue, a supporting brief, and the Gilbertson and Sturm Declarations.[4] Filing 19; Filing 20; Filing 21-1; Filing 21-2. On November 24, 2025, Plaintiffs filed a Response in Opposition to the defendants' motion and the Lewitzke Declaration. Filing 22; Filing 22-1. On December 5, 2025, Defendants filed a reply brief. Filing 28.

---

[4] On December 3, 2025, Defendants filed a separate Motion for Temporary Restraining Order and Preliminary Injunction. Filing 25. On December 19, 2025, the Court issued a Memorandum and Order in which it ordered "that the part of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, Filing 25, seeking a temporary restraining order is denied." Filing 38 at 23.

On December 3, 2025, Plaintiffs filed a Motion for Expedited Discovery "request[ing] that the Court enter an order allowing the parties to conduct expedited discovery to prepare for a preliminary injunction hearing." Filing 26 at 3. After both parties submitted briefs, United States Magistrate Judge Ryan C. Carson issued an order denying Plaintiffs' motion on January 9, 2026. Filing 40. On January 23, 2026, Plaintiffs filed Objections to Magistrate Judge's Order Denying Motion for Expedited Discovery. Filing 41. On February 3, 2026, Defendants filed a response brief opposing Plaintiffs' Objections. Filing 42.

Educated Solutions has been served with the Complaint but has not moved or pleaded in response to the Complaint. *See* Filing 11 (summons returned as to Educated Solutions). The Clerk has entered the default of Educated Solutions on the record. Filing 36. Thus, further references to "Defendants" in this Memorandum and Order—other than in quotations—are to Gilbertson and Century Traffic.

## II.  LEGAL ANALYSIS

"[P]ersonal jurisdiction is a 'threshold' issue." *Hawkeye Gold, LLC v. China Nat'l Materials Indus. Imp. & Exp. Corp.*, 89 F.4th 1023, 1030–31 (8th Cir. 2023). Therefore, the Court will address Defendants' motion as it relates to personal jurisdiction prior to considering whether the case should be transferred pursuant to 28 U.S.C. § 1404(a).

### A.  Motion to Dismiss Century Traffic for Lack of Personal Jurisdiction

#### 1.  *Rule 12(b)(2) Standards*

On a Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the facts are drawn "not [from] the pleadings alone, but [also from] affidavits and exhibits supporting or opposing the motion." *Fastpath, Inc.*, 760 F.3d at 820. "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead sufficient facts to support a reasonable inference

8

that the defendant can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (cleaned up). A plaintiff bears "the burden of establishing a prima facie showing of jurisdiction." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020). "A prima facie showing is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022) (internal quotation marks omitted). However, this "prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *Fastpath*, 760 F.3d at 820 (internal quotation marks omitted). The Court "view[s] the facts in the light most favorable to" the plaintiff. *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 930 (8th Cir. 2023). "The evidentiary showing required at the prima facie stage is minimal." *Zazzle, Inc.*, 42 F.4th at 951.

"Federal courts apply the long-arm statute of the forum state to determine the existence of personal jurisdiction over the parties." *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (subsequent history and internal quotation marks omitted). Nebraska's "long-arm statute," Neb. Rev. Stat. § 25–536, permits jurisdiction to the maximum extent allowed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Hand Cut Steaks Acquisitions, Inc. v. Lone Star Steakhouse & Saloon of Nebraska, Inc.*, 905 N.W.2d 644, 661 (Neb. 2018); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). Thus, "the traditional due process analysis is dispositive[.]" *Kaliannan*, 2 F.4th at 733.

There are two types of personal jurisdiction: general and specific. Standards for specific jurisdiction are relevant in this case.[5] As the Supreme Court has explained, specific jurisdiction

---

[5] Plaintiffs do not assert general jurisdiction as a basis for personal jurisdiction over Gilbertson or Century Traffic. Filing 22 at 4 ("By contrast, specific jurisdiction—our focus here—is proper when the injuries 'ar[o]se out of or [are] related to' the defendant's forum-directed conduct.").

requires there to "be 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (alteration omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 264.

"The requisite contacts 'for this kind of jurisdiction often go by the name purposeful availment.'" *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12–13 (2025) (internal quotation marks omitted) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). That is, a defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co.*, 592 U.S. at 359 (cleaned up). Moreover, these "contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Id.* (internal quotation marks omitted). These contacts "must show that the defendant deliberately 'reached out beyond' its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* (cleaned up). "The law of specific jurisdiction thus seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.* at 360.

"In determining whether specific jurisdiction exists, [the Eighth Circuit] consider[s] the totality of the circumstances using five factors to guide [the] analysis." *Zazzle, Inc.*, 42 F.4th at 952 (internal citation omitted). These five factors[6] are: "(1) the nature and quality of [Defendants'] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of

---

[6] The Eighth Circuit refers to the factors collectively as the *Aftanase* factors. *Johnson v. Arden*, 614 F.3d 785, 798 (8th Cir. 2010).

action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Id.* (quoting *Whaley*, 946 F.3d at 452). The Eighth Circuit has further explained that the first three of these factors are of "primary importance" while the "fourth and fifth factors carry less weight." *Id.* (quoting *Whaley*, 946 F.3d at 452).[7]

In cases involving an intentional tort, the Eighth Circuit considers an additional factor, the "effects" test. *Johnson*, 614 F.3d at 796 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Under the "effects" test,

> [A] defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].

*Johnson*, 614 F.3d at 796 (second alteration in original) (quoting *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004)). The Eighth Circuit has made two further observations relevant here. First, the "[effects] test 'allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state.'" *Id.* (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir. 1991)). Therefore "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Zazzle, Inc.*, 42 F.4th at 954 ("[Plaintiff] has not pleaded facts suggesting that [Defendant] 'uniquely or expressly' aimed its tortious act—the offering for sale

---

[7] The Eighth Circuit's five-factor standard predates a significant number of Supreme Court decisions dealing with personal jurisdiction. *See Electro-Craft Corp. v. Maxwell Elecs. Corp.*, 417 F.2d 365, 368 (8th Cir. 1969) (observing that the Eighth Circuit previously outlined these five factors to be used in assessing personal jurisdiction in *Aftanse v. Econ. Baler Co*, 343 F.2d 187 (1965)). Although this five-factor test originated before the Supreme Court more clearly distinguished general jurisdiction from specific jurisdiction in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9 (1984), the Eighth Circuit has continued to apply this same five-factor test in assessing specific jurisdiction. *See Kendall Hunt*, 74 F.4th at 930.

and selling of infringing goods—at Missouri."). Second, the "effects" test is used "merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Johnson*, 614 F.3d at 796–97; *Dakota Indus. Inc.*, 946 F.2d at 1391 ("In relying on [the] *Calder* ['effects' test], we do not abandon the five-part [*Aftanase*] test. . . . We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged."). The Eighth Circuit, accordingly, "construe[s] the *Calder* effects test narrowly." *Johnson*, 614 F.3d at 797. "[A]bsent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.* (citing *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (per curiam)).

The Court also observes that "[a] defendant may voluntarily consent or submit to the [personal] jurisdiction of a court which otherwise would not have jurisdiction over it." *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)); *see also Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 139 (2023) ("Our precedents have recognized, too, that 'express or implied consent' can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985) ("We have noted that, because the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court'"). "[B]ecause the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 703; *see also Knowlton*, 900 F.2d at 1199 ("Objections to jurisdiction over the person may be waived, either expressly or by not asserting them in a timely manner."). Thus, consent is a "basis of jurisdiction" that "exist[s] independently of long-arm statutes." *Knowlton*, 900 F.2d at 1199. A

12

valid forum selection clause constitutes one way that a litigant can consent to the personal jurisdiction of a court. *Burger King Corp.*, 471 U.S. at 472 n. 14. "Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001).

### 2. The Parties' Arguments

Defendants argue that the Court does not have specific jurisdiction over Century Traffic.[8] Filing 20 at 10. Defendants assert that this is so because "Plaintiffs fail to allege that Century [Traffic] performed any act in Nebraska, let alone 'some act by which the defendant purposely avails itself of the privilege of conducting activities in the forum state. . . .'" Filing 20 at 11 (emphasis omitted) (citing *Burger King Corp*, 471 U.S. at 474–75). Additionally, Defendants argue that the plaintiffs "do not and cannot allege that this lawsuit 'derive[s] from or [is] connected with . . . activities' in Nebraska." *See* Filing 20 at 11 (internal citations omitted).

In response, Plaintiffs argue that the Court has specific jurisdiction over Century Traffic under the "effects" test. Filing 22 at 11. Plaintiffs state, "Under the 'effects test,' a defendant's tortious acts can serve as a source of personal jurisdiction, where 'the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." Filing 22 at 11 (citing *Zazzle, Inc.*, 42 F.4th at 954). According to Plaintiffs, the "effects test" is satisfied in this case because "the effects of [the alleged] torts [were] specifically aimed at harming the [Plaintiffs'] business which is ultimately owned by RSS in Nebraska." Filing 22 at 11.

---

[8] Defendants also argue that the Court does not have general jurisdiction over Century Traffic. Filing 20 at 10.

In reply, Defendants assert that "[w]hile Plaintiffs quoted *Zazzle* to capture the 'effects test' as one that 'can serve as a source of personal jurisdiction,'" "Plaintiffs selectively omitted the remaining and critical portion of *Zazzle's* holding in their brief which upends their legal reasoning." Filing 28 at 5. According to Defendants,

> [T]he *Zazzle* Court held that the "effects test" is "merely an additional factor to consider when evaluating a defendant's relevant contacts with the forum State and [courts] construe the test narrowly, meaning that absent additional contacts, mere effects in the forum state are insufficient to confer jurisdiction."

Filing 28 at 5–6 (second alteration in original) (internal citations and emphasis omitted). According to Defendants, Plaintiffs only argue that Century Traffic is "connected to Nebraska because it was aware of RSS's headquarters located in Nebraska and was aware of the harm that RSS would allegedly suffer in Nebraska," but those "allegations omit any contacts that Century Traffic itself has with the forum state." Filing 28 at 6 (emphasis omitted). Defendants accordingly assert that Plaintiffs' "examples of alleged 'harm to a forum resident,' RSS," without contacts made by Century Traffic with Nebraska, "fail to satisfy jurisdiction" because "the Supreme Court has decided that Defendants' relationship with the forum state 'must arise out of contacts that the defendant himself creates with the forum state[,]' not from any other party's contacts with Nebraska." *See* Filing 28 at 6–7 (alteration in original) (emphasis omitted).

*3. The Court Does Not Have Personal Jurisdiction Over Century Traffic*

Plaintiffs' argument relating to specific jurisdiction over Century Traffic is that Century Traffic's allegedly tortious conduct was specifically aimed at harming RSS and that the harm was experienced in Nebraska. *See* Filing 22 at 11–12. Plaintiffs assert that this can serve as a basis for personal jurisdiction in Nebraska pursuant to the "effects" test. *See* Filing 22 at 11–12 (citing *Zazzle, Inc.*, 42 F.4th at 954). This argument is unavailing for two reasons.

First, Plaintiffs overstate the Eighth Circuit's application of the "effects" test. Plaintiffs posit that "[u]nder the 'effects test,' a defendant's tortious acts can serve as a source of personal jurisdiction, where 'the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].'" Filing 22 at 11. However, the Eighth Circuit has made clear that the "effects" test is used "merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Johnson*, 614 F.3d at 796–97; *Dakota Indus. Inc.*, 946 F.2d at 1391 ("In relying on [the] *Calder* ['effects' test], we do not abandon the five-part [*Aftanase*] test. . . . We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged."). Standing alone, the effects of a defendant's conduct cannot form a basis for personal jurisdiction. *Johnson*, 614 F.3d at 797 ("[A]bsent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction.").

Plaintiffs' misreading has consequences here because Plaintiffs have failed to show that Century Traffic has had any contacts with the state of Nebraska. *See generally* Filing 1; Filing 22-1. The Sturm Declaration states *inter alia* that "Century Traffic has never done business of any kind in the State of Nebraska," "Century Traffic has never placed an order in Nebraska or requested or commissioned any services to take place in Nebraska or from any Nebraskan company," and "Century Traffic has never made or directed a payment to any Nebraskan entity of any kind." Filing 21-2 at 2 (¶¶ 6, 10–11). On the alleged facts, Century Traffic has not made any contacts with Nebraska sufficient to establish specific jurisdiction. *See generally* Filing 1; Filing 21-2; Filing 22-1. Thus, even if Century Traffic's conduct was aimed at producing effects in Nebraska,

15

personal jurisdiction would not lie.[9] *Johnson* 614 F.3d at 797 ("[A]bsent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction.").

Plaintiffs' argument is further unavailing because it centers on "where the plaintiff experienced a particular injury or effect" rather than on whether Century Traffic's conduct connected it to Nebraska. *Zazzle, Inc.*, 42 F.4th at 954; Filing 22 at 11–12. That is, Plaintiffs assert that the Court has personal jurisdiction over Century Traffic because "[t]he effects of [Century Traffic's] torts are specifically aimed at harming [Plaintiffs'] business, which is ultimately owned by RSS in Nebraska." Filing 22 at 11. However, it is inapposite that Plaintiffs experienced the harm in Nebraska because the "proper question is . . . whether the defendant's conduct connects [the defendant] to the forum in a meaningful way." *Zazzle, Inc.*, 42 F.4th at 954 ("The proper question is not where the plaintiff experienced a particular injury or effect. . . ."). The Lewitzke Declaration states that "the leadership of Century Traffic has undertaken an express goal to drive private equity-backed RSS out of the market in the state of Wisconsin." Filing 22-1 at 3 (¶ 7). Century Traffic's allegedly tortious conduct may be "uniquely or expressly" aimed at RSS's business interests in Wisconsin, but Century Traffic's alleged scheme to drive RSS out of the market in Wisconsin only impacts RSS in Nebraska incidentally. *Johnson*, 614 F.3d at 796–97; Filing 22-1 at 11–12; *Zazzle, Inc.*, 42 F.4th at 954 ("[Plaintiff] has not pleaded facts suggesting that [Defendant] 'uniquely or expressly' aimed its tortious act—the offering for sale and selling of infringing goods—at Missouri."); Filing 22 at 11–12 (citing Filing 22-1 at 3 (¶¶ 6–7, 11)).

---

[9] The five *Aftanase* factors point strongly against personal jurisdiction over Century Traffic when assessed in their totality. *Zazzle, Inc.*, 42 F.4th at 952. The first three factors, which "are of 'primary importance'" according to the Eighth Circuit, are uniformly against the Court exercising personal jurisdiction, as the Century Traffic has had no contacts with Nebraska. *Id.* "The fourth and fifth factors 'carry less weight and are not dispositive'" and do not clearly favor personal jurisdiction over Century Traffic, as convenience to the parties is not clear cut. *Kaliannan*, 2 F.4th at 733

Although "[t]he evidentiary showing required at the prima facie stage is minimal," *Zazzle, Inc.*, 42 F.4th at 951, "a plaintiff must plead sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state" to survive a motion to dismiss for lack of personal jurisdiction, *Creative Calling Sols., Inc.*, 799 F.3d at 979 (cleaned up). As shown above, Plaintiffs have not done so with respect to Century Traffic, and the Court therefore grants Defendants' Motion to Dismiss with respect to Century Traffic. Accordingly, Century Traffic is dismissed as a defendant and what remains of this decision relates only to Gilbertson.

### B. Motion to Dismiss Gilbertson for Lack of Personal Jurisdiction

#### 1. *The Parties' Arguments*

Gilbertson makes three principal arguments purporting to show that the Court does not have personal jurisdiction over him. As a preliminary matter, Gilbertson contends that "Wisconsin law governs the merits of this case." Filing 20 at 13 n. 2. According to Gilbertson, this is so because "[t]he Nebraska choice-of-law provision against [him] is void on two independent grounds." Filing 20 at 13 n. 2. The Nebraska choice-of-law provision is void, according to Gilbertson, because the Proprietary Matters Agreement lacks consideration and because "Nebraska choice-of-law rules require voiding a choice-of-law provision if 'application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state. . . .'" Filing 20 at 13 n. 2 (citing *DCS Sanitation Mgmt. v. Castillo*, 435 F.3d 892, 896 (8th Cir. 2006)). According to Gilbertson, "That is certainly the case here." Filing 20 at 13 n. 2. Gilbertson asserts, "Without an enforceable choice-of-law provision," "Nebraska choice-of-law rules look to 'the local law of the state which . . . has the most significant relationship to the transactions and the parties." Filing 20 at 13 n. 2. According to Gilbertson, this requires the application of Wisconsin substantive law. Filing 20 at 13 n. 2.

17

On the understanding that Wisconsin substantive law applies to this case, Gilbertson raises his first argument. Filing 20 at 14. Gilbertson maintains that under Wisconsin law, the Preliminary Matters Agreement is void and must "be struck down for want of consideration," as "RSS did not offer [him] any additional compensation, benefits, or change in responsibilities in exchange [for executing the agreement]." *See* Filing 20 at 14. Second, Gilbertson asserts that "[e]ven if the Court disagrees [that Wisconsin law applies], Nebraska substantive law supports voiding the consent provision in any event," as the Proprietary Matters Agreement lacks lawful consideration under Nebraska law too. *See* Filing 20 at 14 n. 3 (citing *Irwin v. W. Gate Bank,* 848 N.W.2d 605, 610 (Neb. 2014)).

According to Gilbertson, a finding that he did not consent to personal jurisdiction requires the Court to determine whether it has specific personal jurisdiction over him. Filing 20 at 15. Therefore, Gilbertson's third argument maintains that the Court does not have specific jurisdiction over him because the lawsuit does not derive from and is not connected to any contacts he had with Nebraska.[10] Filing 20 at 15.

In response, Plaintiffs argue that they need only "make a *prima facie* showing of personal jurisdiction" at this stage of litigation and that they have done so with respect to Gilbertson. *See* Filing 22 at 2, 6. According to Plaintiffs, Gilbertson consented to personal jurisdiction in Nebraska when he entered the Proprietary Matters Agreement, which Plaintiffs point out states, "Employee hereby expressly consents to the personal jurisdiction and exclusive venue of the state and federal courts located in the State of Nebraska for any lawsuit that arises form or relates to this Agreement." Filing 22 at 6 (citing Filing 1-1 at 8 (¶ 15)). Plaintiffs dispute that the Proprietary

---

[10] Gilbertson also argues that general jurisdiction cannot be established over him because "[he] is a life-long Wisconsin resident and is 'at home' in Wisconsin." Filing 20 at 15.

Matters Agreement's choice-of-law clause should be struck down under Nebraska choice-of-law rules because "Wisconsin does not have a materially greater interest than Nebraska," and "even if Wisconsin had a 'materially greater interest' in the dispute, application of Nebraska law with respect to the Proprietary Matters Agreement is not contrary to the public policy of Wisconsin." Filing 22 at 7–8. Accordingly, Plaintiffs argue that Nebraska substantive law applies and that "continued employment is sufficient consideration for employee restrictive covenants in Nebraska." Filing 22 at 7. However, Plaintiffs maintain that even if Wisconsin law applied, the Proprietary Matters Agreement would still rest on sufficient consideration as Gilbertson's "eligibility for continued employment, alone, would have been sufficient consideration for signing the agreement under Wisconsin law." Filing 22 at 9 (citing *Runzheimer Int'l, Ltd. v. Friedlen*, 862 N.W.2d 879, 892 (Wis. 2015)).

Plaintiffs also maintain that the Court has specific jurisdiction over Gilbertson. Plaintiffs state, "Despite arguments to the contrary, Gilbertson has contacts with the State of Nebraska," and that through these contacts, "Gilbertson has purposely availed himself of Nebraska." *See* Filing 22 at 10.

In reply, Gilbertson argues that "[u]nless [he] independently consented to jurisdiction in Nebraska (which he did not), [he] lacks sufficient contacts with the forum state to satisfy the test for personal jurisdiction." Filing 28 at 7.

2. *Gilbertson Consented to This Court's Jurisdiction*

Gilbertson contests the Court's personal jurisdiction over him because he argues that "Wisconsin law governs the merits of this case," and "[t]he 'proprietary matters agreement,' including his alleged consent to personal jurisdiction, is void for want of consideration [under Wisconsin law]." *See* Filing 20 at 12–15. Gilbertson also asserts that that "Nebraska substantive law supports voiding the consent provision." Filing 20 at 14 n. 3. Because Gilbertson asserts that

both Wisconsin and Nebraska law "support[] voiding the consent provision" in the Proprietary Matters Agreement, *see* Filing 20 at 14, and the fact that the Court finds that neither Wisconsin nor Nebraska law support finding the Proprietary Matters Agreement void on the asserted grounds, the Court finds it unnecessary to determine which state's substantive law applies for purposes of deciding this jurisdictional motion.[11] This course is advisable because "[c]ourts are hesitant to consider the merits of a choice of law issue at the motion to dismiss stage." *Godfry v. State Farm Mut. Ins. Co.*, No. 08–4813, 2009 WL 564636, at *2 n. 4 (E.D. Pa. Mar. 4, 2009) (citing *Children's Hosp. of Phila. v. Horizon NJ Health*, No. 07-5061, 2008 WL 4330311, at *7 (E.D. Pa. Sept. 22, 2008) (saying that "a motion to dismiss does not present an appropriate forum for a choice of law . . . determination")).

The Proprietary Matters Agreement selects Nebraska law. Filing 1-1 at 8 (¶ 15). The Court therefore first assesses Gilbertson's argument that "Nebraska substantive law supports voiding the consent provision." Filing 20 at 14 n. 3. On the Court's survey of caselaw applying Nebraska law, it is not clear whether an employer's forbearance in exercising its right to terminate an at-will employee constitutes lawful consideration. In *Aon Consulting, Inc. v. Midlands Financial Benefits, Inc.*, the Nebraska Supreme Court had the opportunity to address a similar question, as "Midlands argue[d] that Pearson's continued employment after signing the [nonsolicitation] agreement did not constitute adequate consideration." 748 N.W.2d 626, 638 (Neb. 2008). However, the court stated that it "need not address this specific argument, because [the court] conclude[d] that the nonsolicitation agreement recites other consideration." *Id.* The Nebraska Supreme Court noted in that case that, "[g]enerally, sufficient consideration for an agreement will be found if there is some

---

[11] Plaintiffs similarly assert that both Wisconsin and Nebraska law support their position that lawful consideration underlies the Proprietary Matters Agreement. Filing 22 at 7–9.

benefit to one of the parties or a detriment to the other." *Id.* at 638–39 (citing *Schuelke v. Wilson,* 587 N.W.2d 369 (1998)). Gilbertson allegedly received eligibility for equity ownership in HP RSS Topco in exchange for his execution of the Proprietary Matters Agreement, which Gilbertson apparently exercised when he purchased and received equity on April 15, 2025. Filing 22-1 at 4 (¶¶ 16, 18). Although Gilbertson is correct that "'[a] mere pretense of bargain does not suffice, where . . . the purported consideration is merely nominal," *Irwin,* 848 N.W.2d at 610; Filing 20 at 14 n. 3 (citing *Irwin*), Plaintiffs purportedly extended not only eligibility for ownership in HP RSS Topco but "continued access to the Plaintiffs' confidential and proprietary information," Filing 22-1 at 4 (¶ 18); *Pruss v. Pruss,* 514 N.W.2d 335, 345 (Neb. 1994) (saying "[g]enerally, a court will not inquire into the adequacy or value of the stated consideration so long as the performance or the promise of performance is one that the promisor considers of value" and that "[i]t is sufficient that the promisee did something he or she was not otherwise required to do or that the promisor received something he or she was not otherwise entitled to receive."). Therefore, the Court finds unavailing Gilbertson's argument that "Nebraska substantive law supports voiding the consent provision" for want of consideration. *See* Filing 20 at 14 n. 3.

The Court notes that the parties spent considerable effort disputing whether Nebraska choice of law rules require voiding the Proprietary Matters Agreement's choice of Nebraska law. *See* Filing 20 at 13; Filing 22 at 7–8. However, for reasons set out below, the Court finds it unnecessary to wade into this dispute because, even if Nebraska law does not apply, Wisconsin law does not favor Gilbertson.

Gilbertson's argument that the Proprietary Matters Agreement must be struck down even if Nebraska law did not apply is unavailing because the Agreement would not be void for lack of consideration under Wisconsin law either. In *Runzheimer*, the Supreme Court of Wisconsin

"examine[d] the enforceability of a restrictive covenant signed by an existing at-will employee."

862 N.W.2d at 882. The Wisconsin Supreme Court held,

> [A]n employer's forbearance in exercising its right to terminate an at-will employee constitutes lawful consideration for signing a restrictive covenant. Although theoretically, an employer could terminate an employee's employment shortly after having the employee sign a restrictive covenant, that employee would then be protected by other contract principles such as fraudulent inducement or good faith and fair dealing, so that the restrictive covenant could not be enforced.

*Runzheimer Int'l., Ltd.*, 862 N.W.2d at 882.

Much like the former employee at issue in *Runzheimer*, Gilbertson was an at-will employee. Filing 1-1 at 2, 8 (¶ 15) ("Nothing contained in [the] [Proprietary Matters] Agreement shall be deemed to alter or modify [Gilbertson's] status as an at-will employee of ["Road Safety Services, Inc. and its Subsidiaries"].). The Proprietary Matters Agreement provides,

> [I]n consideration of [Gilbertson's] employment by [RSS and its subsidiaries] and the continuation thereof, and to induce [RSS and its subsidiaries] to employe [Gilbertson], continue [Gilbertson's] employment, and to allow [Gilbertson] access to and use of its confidential and proprietary information, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, [RSS and its subsidiaries] and [Gilbertson] agree [to the Proprietary Matters Agreement].

Filing 1-1 at 2; *see also* Filing 22-1 at 4 (¶ 18) ("Gilbertson received the following benefits for signing the Proprietary Matters Agreement: (1) eligibility for equity ownership in [HP] RSS [Topco], (2) a temporary forbearance in the Plaintiffs' right to terminate his employment for failing to sign the Proprietary Matters Agreement, and (3) continued access to the Plaintiffs' confidential and proprietary information."). Gilbertson's receipt of a "temporary forbearance in the Plaintiffs' right to terminate his employment for failing to sign the Proprietary Matters Agreement" in exchange for executing the Proprietary Matters Agreement constitutes lawful consideration under Wisconsin Supreme Court precedent. *Runzheimer Int'l., Ltd.*, 862 N.W.2d at 882. Therefore, even if Nebraska law does not apply, the Court finds unavailing Gilbertson's argument that "[t]he

'proprietary matters agreement,' including [his] alleged consent to personal jurisdiction, is void for want of consideration." Filing 20 at 12.

In the conclusion of Gilbertson's initial brief, Gilbertson asserts that "[h]is supposed 'consent' to jurisdiction is void for lack of consideration and on public policy grounds as well." Filing 20 at 17. The only policy-based argument Gilbertson advances in the initial brief that would purportedly void the forum selection clause is his argument relating to *forum non conveniens*. *See* Filing 20 at 17 n. 4; Filing 28. Gilbertson cited *Northern Natural Gas Company v. Centennial Resource Production, LLC,* (*Northern Natural Gas*) for the proposition that "the Nebraska Supreme Court has recognized that *forum non conveniens* will invalidate an otherwise binding forum-selection clause on its own." Filing 20 at 17 n. 4 (citing *Northern Natural Gas,* 4 N.W.3d 185, 198 (Neb. 2024)). Supposedly on these grounds, Gilbertson states that "the Nebraska Supreme Court invalidated a binding forum-selection clause [in 2024]." Filing 28 at 8 (citing *Northern Natural Gas*, 4 N.W.3d at 198). Therefore, "[Gilbertson] ask[s] the Court . . . to apply [the doctrine of *forum non conveniens*] to the case at bar and recognize Wisconsin as the more appropriate forum." Filing 20 at 17 n. 4; Filing 28 at 8 n. 4.

However, the *Northern Natural Gas* case Gilbertson cites does not stand for the proposition that the doctrine of *forum non conveniens* will invalidate an otherwise binding forum-selection clause. Instead, the *Northern Natural Gas* court stated that "[w]hen parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." 4 N.W.3d at 198–99. Ultimately, the court concluded that "[t]he [state] district court did not err in finding it had personal jurisdiction over [the defendant] based upon [the defendant's] consent through the forum selection clause." *Id.* at 202. The Court finds unavailing Gilbertson's argument that the

forum selection clause should be voided under the doctrine of *forum non conveniens* because, under Nebraska law, Gilbertson has waived factors relating to whether the forum is inconvenient or less convenient for him, and the Court identifies no issues relating to the "court's own administrative and legal problems" that would make the choice of forum inappropriate. *Id.* at 198 (saying "the plaintiff's choice of a forum should not be disturbed except for 'weighty' reasons and only when trial in the chosen forum would establish 'oppressiveness and vexation to a defendant . . . out of all proportion to the plaintiff's convenience,' or when the forum is inappropriate 'because of considerations affecting the court's own administrative and legal problems.'").

Lastly, for the first time in Gilbertson's reply brief, Gilbertson asserts that Plaintiffs' argument that "Gilbertson consented to jurisdiction in Nebraska . . . overlooks Nebraska's choice-of-law rules which require voiding forum selection clauses if the 'fundamental policy of a state which has a materially greater interest than the chosen state' is contrary to the chosen law." Filing 28 at 8 (citing *DCS Sanitation Mgmt.*, 435 F.3d at 896). This argument is unavailing because *DCS Sanitation Management* does not stand for the cited proposition that Nebraska's choice-of-law rules could require voiding a forum selection clause but that, under certain circumstances, Nebraska choice-of-law rules will require that an agreed to choice-of-law provision be voided. 435 F.3d at 896 (saying that "'the parties' contractual choice of law will apply unless . . . (2) 'application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state. . . .'").

The Proprietary Matters Agreement contains a forum selection clause saying that Gilbertson "expressly consents to personal jurisdiction and exclusive venue of the state and federal courts located in the State of Nebraska for any lawsuit that arises from or relates to this agreement." Filing 1-1 at 8 (¶ 15). Gilbertson's arguments that Wisconsin and Nebraska law support finding

the Proprietary Matters Agreement void are unavailing, and the Court finds that Gilbertson consented to this Court's exercise of personal jurisdiction over him. Therefore, the Court finds it unnecessary to consider whether the Court can exercise specific jurisdiction over Gilbertson.

### C.  Century Traffic is Not a Necessary Party

The Court is dismissing Century Traffic as a defendant in this case on personal jurisdiction grounds. The Court turns its attention to whether Century Traffic is a necessary and indispensable party such that Century Traffic's dismissal requires that the entire case be dismissed. The Court raises this issue because, if Century Traffic is a necessary and indispensable party under Federal Rule of Civil Procedure 19, the Court must dismiss the action *sua sponte*. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008) ("A court with proper jurisdiction may also consider *sua sponte* the absence of a required person and dismiss for failure to join."); *Diagnostic Unit Inmate Council v. Motion Picture Ass'n of Am, Inc.*, 953 F.2d 376, 378 (8th Cir. 1992) (citing *Enter. Mgmt. Consultants v. United States ex rel. Hodel*, 883 F.2d 890, 892–93 (10th Cir. 1989) for "general agreement that issue of whether party is indispensable is not waivable and reviewing court has independent duty to raise issue sua sponte"). For the reasons below, Century Traffic is not a necessary party.

According to Federal Rule of Civil Procedure 19(a)(1), an absent person is necessary if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). If a person is necessary, that person must be joined if feasible. Fed. R. Civ. P. 19(a). "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing

parties or should be dismissed." Fed. R. Civ. P. 19(b). Because the Court determines that Century Traffic is not a necessary party, the Court does not reach the latter two inquiries.

Rule 19(a)(1) states that a person is necessary if, in that person's absence, the court cannot accord complete relief. Fed. R. Civ. P. 19(a)(1)(A). Rule 19(a)(1)'s reference to complete relief is specifically limited to whether complete relief can be accorded among "existing parties." Fed. R. Civ. P. 19(a)(1)(A). Accordingly, the rule centers "on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person." *Gwartz v. Jefferson Mem. Hosp. Ass'n*, 23 F.3d 1426, 1428 (8th Cir. 1994) (quoting *LLC Corp. v. Pension Benefit Guar. Corp.*, 703 F.2d 301, 305 (8th Cir. 1983)).

In *Gwartz*, the Eighth Circuit assessed whether an anesthesiologist's private anesthesiology practice, JAA, was a necessary party. *Gwartz*, 23 F.3d at 1427–1431. In a previous action (*Gwartz I*), Gwartz, the plaintiff-anesthesiologist, sued Jefferson, the defendant-hospital, bringing two causes of action. The first claim was for breach of contract, and the second claim was for intentional interference with a business relationship, alleging that Jefferson "prevented [Gwartz] and his associates from utilizing [the hospital] in that the Defendants acting in concert with each other … [d]irected the employees of [Jefferson] and other physicians not to use the services of [Gwartz] or [JAA]." *Id.* at 1427 (alterations in original). The second claim was found to accrue to JAA, not Gwartz personally. *Id.* at 1428. "Because Gwartz could not sue in his individual capacity for damages to JAA, the district court concluded that JAA was a necessary party under 19(a) 'in that complete relief cannot be accorded in [JAA's] absence'" and ultimately found JAA indispensable. *Id.* at 1427. The Eighth Circuit dismissed Gwartz's appeal in *Gwartz I*. *Id.* However, Gwartz brought another action (*Gwartz II*) that realleged the breach of contract claim and also claimed that "Jefferson, 'by and through its employees retaliated against [Gwartz], interfered with

[Gwartz's] ability to minimize his damages by reason of the breach of his contract with the hospital and interfered with [Gwartz's] ability to perform services for [JAA] and, thereby interfered with this employment relationship with [JAA]." *Id.* at 1427–28. The Eighth Circuit ultimately found that "Gwartz's complaint allege[d] that Jefferson breached [Gwartz's] personal employment contract. JAA's presence [was] not necessary to resolution of Gwartz's breach of contract claim; JAA was not a party to the contract nor [did] Jefferson claim that JAA had any interest in it." *Id.* at 1428. Thus, *Gwartz I* stated that "only JAA ha[d] standing to bring a claim that Jefferson prevented it from utilizing the hospital," but "*Gwartz II* assert[ed] claims that Gwartz himself ha[d] standing to bring" suit and that Gwartz's personal claims could be completely resolved at trial, making JAA unnecessary under Rule 19. *See id.* at 1429.

Like *Gwartz II*, Century Traffic is not necessary to resolve Plaintiffs' claims. *Id.* at 1428. Whether further litigation will be pursued in another forum against Century Traffic is inapposite for purposes of determining whether the Court could completely resolve the claims raised against Gilbertson and Defaulted Defendant Educated Solutions. *Id.* Five causes of action are presently before the Court given that Century Traffic was dismissed as a defendant in §2.A of this order: Count I, breach of contract against Gilbertson; Count III, unjust enrichment against Gilbertson; Count IV, breach of fiduciary duty and duty of loyalty against Gilbertson; Count V, unfair competition against Gilbertson and Educated Solutions; and Count VI, civil conspiracy against Gilbertson and Educated Solutions. Filing 1 at 10–16. None of the remaining claims require Century Traffic as a party in order to accord complete relief.

"All that is at issue here is whether complete relief can be accorded among [the existing parties] on [Plaintiffs'] claims in the absence of [Century Traffic]." *Gwartz*, 23 F.3d at 1429. Whether the Complaint states any plausible claims to relief is not considered here, as whether the

27

Complaint has done so with respect to any or all of the alleged claims is not an issue under Rule 19(a)(1). *Id.* It is apparent here that Count I can be completely resolved in Century Traffic's absence because Century Traffic was not a party to any alleged contract and does not have any interest in any alleged contract. *Gwartz*, 23 F.3d at 1428. Count III alleges that Gilbertson's conduct "has resulted in [his] unjust enrichment" and that Gilbertson's conduct has caused certain harms and losses to Plaintiffs. Filing 1 at 13. Whether Plaintiffs pursue an unjust enrichment claim against Century Traffic in another forum is not relevant to whether Plaintiffs can pursue their claim against Gilbertson here. Filing 1 at 13. As articulated in the pleading, Plaintiffs' unjust enrichment claim against Gilbertson does not depend on Century Traffic and can be pursued independent of any possible claim Plaintiffs may also have against Century Traffic. Filing 1 at 13; *Gwartz*, 23 F.3d at 1429 ("The focus is on relief between the parties. . . . JAA's presence is not necessary to resolution of Gwartz's breach of contract claim.").

Like Count I, Count IV, breach of fiduciary duty and duty of loyalty, was raised only against Gilbertson and there is no indication that Plaintiffs would be unable to receive complete relief from Gilbertson on the claim if the Court proceeds without Century Traffic. Filing 1 at 13–15. The cause of action asserts that Gilbertson owed certain duties and that Gilbertson violated those duties. *See* Filing 1 at 13–14. Count V alleges unfair competition against Gilbertson and Educated Solutions. Filing 1 at 14–15. Specifically, Count V alleges that Gilbertson received certain benefits by "tak[ing] advantage of Plaintiffs' confidential information, relationships with employees and customers, and good will in the marketplace." *See* Filing 1 at 15. Whether Gilbertson has done so can be completely resolved even if Century Traffic may have also engaged in the same or similar conduct. *See* Filing 1 at 15; *Gwartz*, 23 F.3d at 1428 ("The focus is on relief between the parties and not on the speculative possibility of further litigation between a party and

28

an absent person."). That is, whether Gilbertson engaged "unfair competition" does not turn on whether Century Traffic engaged in any similar behavior that may or may not also be actionable. Finally, Count VI alleges civil conspiracy against Gilbertson and Educated Solutions. Again, whether Gilbertson and Educated Solutions engaged in a conspiracy to commit the allegedly illegal acts does not require Plaintiffs to allege that Century Traffic also committed such conduct in order to have relief. *Gwartz*, 23 F.3d at 1428.

Whether Gilbertson is personally responsible for any of the alleged conduct and is ordered to comply with compensatory, injunctive, and/or other forms of relief can be determined and accomplished no matter if Century Traffic also engaged in actionable behavior. Like *Gwartz II*, this is a case where the claims against Gilbertson can be fully resolved without Century Traffic's presence. *Gwartz*, 23 F.3d at 1428 (saying "[t]he focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person"); *see also Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1039–40 (11th Cir. 2014) (saying that shipping center landlords were not necessary parties under Rule 19 because Big Lots could pay damages and comply with injunctions). Conversely, this is not a case where relief could not be awarded based on Gilbertson's conduct because "an unjoined party controls the means by which the requested relief would be effectuated or administered." *See Estate of McFarlin ex rel. Lass v. City of Storm Lake*, 277 F.R.D. 384, 391 n. 4 (N.D. Iowa 2011) (saying "[t]he typical situation in which Rule 19(a)(1)(A) requires joinder is when an unjoined party controls the means by which the requested relief would be effectuated or administered."); *see also Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2d Cir. 1990) (saying that a landlord was a necessary party because the court could not compel the increase of electrical capacity to certain floors without the landlord's consent); *City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 299 (2d Cir. 2006)

(saying joinder of a city was necessary in order for a county to comply with a court order given the county needed the city's approval to acquire certain property for the purposes of compliance). Here, Century Traffic does not "control[] the means by which the which the requested relief would be effectuated or administered" even if additional relief against Century Traffic specifically is needed to create the effect Plaintiffs desire. *Estate of McFarlin ex rel. Lass*, 277 F.R.D. at 391 n. 4.

Century Traffic is also not necessary under Rule 19(a)(1)(B). Rule 19(a)(1)(B)(i) asks whether Century traffic "claims an interest relating to the subject of the action" such that disposing the action in Century Traffic's absence would "as a practical matter impair or impede [Century Traffic's] ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). Century Traffic has not claimed any interest relating to the subject of the action but has, rather, affirmatively argued for its dismissal without referencing any interests that it purports to defend. "Rule 19(a)(1)(B)(ii) asks whether, in the absence of [Century Traffic], an existing party will incur 'double, multiple, or otherwise inconsistent obligations." *Micek v. Mayo Clinic*, No. 21-CV-0436 (PJS/ECW), 2021 WL 5282755, at *3 (D. Minn. Nov. 12, 2021). According to the United States District Court for the District of Minnesota, "The risk of multiple or inconsistent obligations almost always arises when the absent party is a prospective plaintiff. In that circumstance, the defendant may be at risk of being sued multiple times and having multiple judgments entered against it." *Id.* (emphasis omitted). The absent party in this case is not a prospective plaintiff but, rather, a former defendant that was dismissed. Century Traffic's absence would therefore not result in Gilbertson "paying damages more than once" under Rule 19 principally because Century Traffic has not asserted any interest in the action but has, instead, defended against it. Fed. R. Civ. P. 19(a)(1)(B)(ii). Likewise, even if Plaintiffs were to pursue litigation against Century Traffic elsewhere, there would not be

30

"substantial risk of incurring . . . inconsistent obligations because of that interest" because Century Traffic has not claimed an interest in the subject matter. Fed. R. Civ. P. 19(a)(1)(b)(ii). Therefore, Century Traffic is not a necessary party to the present litigation, and the Court, accordingly, need not consider whether joinder is feasible or if Century Traffic is an indispensable party requiring the case's complete dismissal.

### D.  Motion to Transfer Case as it Relates to Gilbertson

The Court found above that Gilbertson consented to personal jurisdiction. Gilbertson requests in the alternative that "the Court . . . transfer this case to the United States District Court for the Eastern District of Wisconsin (Milwaukee Division) pursuant to 28 U.S.C. § 1404(a)." *See* Filing 19 at 1. Because this order dismisses Century Traffic as a defendant, as the Court does not have personal jurisdiction over Century Traffic, the following analysis, again, relates only to Gilbertson. Therefore, the Court assesses whether transfer is appropriate pursuant to section 1404(a) with respect to Gilbertson only.

#### 1.  Discretionary Transfer Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[W]here it might have been brought" refers to a district where the plaintiff could have brought suit against the defendant. *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). "A case could have been brought in a transferee district if the transferee district has subject matter jurisdiction, personal jurisdiction, and is a proper venue." *Masud v. TD Ameritrade, Inc.*, 8:24CV499, 2025 WL 1644423, at *5 (D. Neb. June 10, 2025) (citing *Bhd. of Maint. Of Way Employees Div./IBT*, 485 F. Supp. 3d at 1056). Further, § 1404(a) requires the Court to consider not only where the case might have been brought but also the convenience of the parties, convenience of the witnesses, and the

31

interest of justice. *Bhd. of Maint. of Way Employes Div./IBT*, 485 F. Supp. 3d at 1061 (citing *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010)).

The Court need not consider whether the action could have been brought in the Eastern District of Wisconsin because section 1404(a) factors clearly counsel against the Court's discretionary transfer. The Court concludes transfer is not proper and denies Gilbertson's motion.

### 2. The Parties' Arguments

According to Gilbertson, "The convenience of the parties, witnesses, and 'the interests of justice' all merit this Court exercising its discretion to transfer the case." Filing 20 at 16 (citing 28 U.S.C. § 1404(a); *Terra Int'l Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997)). Gilbertson asserts that convenience points in favor of transferring the case because "[t]hree of the five parties are exclusively located in Wisconsin along with all their respective witnesses" and that "[o]nly the plaintiffs have any ties to Nebraska whatsoever, but both operate in Wisconsin." Filing 20 at 16. Gilbertson also argues that the interests of justice support the Court transferring the case because "[t]he allegations all pertain to activities and ostensible influence on the roadway traffic control market in Wisconsin," and "most witnesses and other evidence will be located in Wisconsin." Filing 20 at 16 (emphasis omitted). Additionally, Gilbertson asserts that "a Wisconsin citizen's right to work should be adjudicated in Wisconsin," as "Wisconsin public policy closely guards its citizens' right to earn a living." Filing 20 at 16–17.

In response, Plaintiffs assert that "[Gilbertson's] request for discretionary transfer under § 1404(a)" fails because, first, the "request to transfer venue assumes away the forum-selection clause that governs Gilbertson's disputes and would be dispositive under *Atlantic Marine* if enforced." Filing 22 at 13 (citing *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49 (2013)). According to Plaintiffs, *Atlantic Marine* stands for the proposition that "a valid forum selection clause will be 'given controlling weight in all but the most exceptional

cases.'" Filing 22 at 12–13 (citing *Atl. Marine,* 571 U.S. at 59–60). Second, Plaintiffs assert that "even without relying on the forum selection clause, [Gilbertson] [has] not shown that the Eastern District of Wisconsin is clearly more convenient," as "[a]ny inconvenience to [Gilbertson] does not overcome Plaintiffs' choice of forum, the locus of harm, and the concentration of Plaintiffs' witnesses and proof." Filing 22 at 13. Plaintiffs conclude, "Transfer should be denied." Filing 22 at 13.

In reply, Gilbertson asserts that even if Plaintiffs are correct that he consented to jurisdiction in Nebraska, "the Court may exercise its discretion to transfer the entire case to the Eastern District of Wisconsin regardless of personal jurisdiction" for reasons of judicial economy. *See* filing 28 at 8–9. Gilbertson argues that if the case against him proceeded in Nebraska and the case against Century Traffic proceeded in Wisconsin, "[t]here would be two different case schedules, two different governing sets of local rules, two different sets of discovery, and potentially even different (or conflicting) outcomes for the same set of facts, let alone two different federal appellate courts who would review those outcomes." Filing 28 at 9 (emphasis omitted). Thus, Gilbertson asks the Court to transfer the case even if he consented to personal jurisdiction in Nebraska. Filing 28 at 8–9.

Gilbertson's reply also argues that if the Court finds personal jurisdiction over Gilbertson, the three § 1404 factors counsel that the case be transferred, as Gilbertson "[has] no connection at all to Nebraska" but RSS filed "this very lawsuit because RSS was concerned with its Wisconsin market share," and "Plaintiff Forward Traffic is located in Wisconsin." Filing 28 at 10 (emphasis omitted).

### 3. *28 U.S.C. § 1404(a) Factors*

The Court considers whether the transfer-analysis factors under 28 U.S.C. § 1404(a) have been met. The Eighth Circuit Court of Appeals has "declined to offer an 'exhaustive list of specific

33

factors to consider' in making the transfer decision, *see Terra Int'l, Inc.*, 119 F.3d at 691; instead, district courts should weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *In re Apple, Inc.*, 602 F.3d at 912. This Court has stated elsewhere,

> In deciding whether to transfer a case under section 1404(a), courts typically have taken into account considerations such as the following: (1) the convenience of the parties (accessibility to records and documents, location where conduct occurred, applicability of state's substantive law); (2) the convenience of the witnesses (willingness of witnesses to appear, ability to subpoena witnesses, adequacy of deposition testimony); and (3) the interest of justice (judicial economy, plaintiff's choice of forum, comparative costs to the parties litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict-of-law issues, advantages of having a local court determine questions of local law).

*Bhd. of Maint. of Way Employes Div./IBT*, 485 F. Supp. 3d at 1061 (citing *In re Apple, Inc.*, 602 F.3d at 912).

"[I]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *In re Apple, Inc.*, 602 F.3d at 913 (quoting *Terra Int'l*, 119 F.3d at 695). Additionally, the Supreme Court has noted that "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine Const. Co.*, 571 U.S. at 59–60 (majority opinion) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 187 U.S. 22, 33 (1988) (Kennedy, J., concurring)). The Eighth Circuit has added that "courts have determined that a valid and applicable forum selection clause in a contract is 'a significant factor that figures centrally in the district court's calculus.'" *Terra Int'l*, 119 F.3d at 691 (citing *Stewart Org., Inc.*, 487 U.S. at 29)).

Gilbertson has not met his "burden of proving that a transfer is warranted." *In re Apple, Inc.*, 602 F.3d at 913. The Court finds Gilbertson's arguments relating to the interests of justice unavailing when balanced against the "considerable deference" federal courts give "to a plaintiff's

choice of forum," *In re Apple, Inc.*, 602 F.3d at 913; *Bhd. of Maint. of Way Employes Div./IBT,* 485 F. Supp. 3d at 1061 (saying plaintiff's choice of forum goes to the interests of justice), and the fact that "§ 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases,'" *Atl. Marine Const. Co.*, 571 U.S. at 59–60 (majority opinion) (quoting *Stewart Org., Inc.*, 187 U.S. at 33 (Kennedy, J., concurring)). Additionally, Gilbertson has not shown with anything more than conclusory suggestions that this Court would have more difficulty applying Wisconsin substantive law than another court if that is, indeed, the law that governs the merits of the case or that a judgment issued by this Court would be more difficult to enforce than a judgement issued elsewhere. Filing 20 at 16–17.

Gilbertson also maintains that judicial economy would be impaired should the case against him be litigated in Nebraska because "the case would be forced to proceed on two tracks: one here (against Gilbertson), and one in the Eastern District of Wisconsin (against Century Traffic)." Filing 28 at 8–9. Upon the filing of this order there will be no active case against Century Traffic, as the Court is dismissing Century Traffic as a defendant in this matter for lack of personal jurisdiction. The fact that litigation might be pursued against Century Traffic in another court at a future time does not provide an exceptional circumstance such that the Court should choose not to give the agreed to forum selection clause the controlling weight that it is ordinarily due. *See Atl. Marine Const. Co.*, 571 U.S. at 59–60 (majority opinion) (quoting *Stewart Org., Inc.*, 187 U.S. at 33 (Kennedy, J., concurring)).

As for the convenience of the parties, Gilbertson concedes that "it is perhaps a coin flip since some parties will be inconvenienced regardless of whether Nebraska or Wisconsin is chosen." Filing 28 at 9. However, Gilbertson urges the Court to consider that he "has been sued in his individual capacity," and that the lawsuit "creates an individual hardship [on him] as opposed

to a corporate hardship [on Plaintiffs]." Filing 28 at 9. Gilbertson also urges the Court to consider that most evidence will be located in Wisconsin. Filing 20 at 17. These arguments are similarly unavailing because Gilbertson consented to the possibility of these hardships in signing the Proprietary Matters Agreement. *Atl. Marine Const. Co.*, 571 U.S. at 59–60 (majority opinion) ("[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" (quoting *Stewart Org., Inc.*, 187 U.S at 33 (Kennedy, J., concurring))). Additionally, while Gilbertson would undoubtedly bear some costs litigating in Nebraska, Plaintiffs correctly observe that "RSS's principal place of business is in Nebraska," and "decisionmakers concerning the Company's confidential information, competitive strategy, workforce decisions, and damages are in Nebraska" and transfer to another forum would also inconvenience Plaintiffs. *See* Filing 22 at 13; Filing 28 at 9 ("As to the convenience of parties, it is perhaps a coin flip since some parties will be inconvenienced regardless of whether Nebraska or Wisconsin is chosen."). Gilbertson has not shown that the convenience of the parties favors transferring the case such that the Court should look past Gilbertson's consent to Nebraska and the "considerable deference [given] to a plaintiff's choice of forum." *In re Apple, Inc.*, 602 F.3d at 913; *Atl. Marine Const. Co.*, 571 U.S. at 59–60 (majority opinion) ("[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" (quoting *Stewart Org., Inc.*, 187 U.S at 33 (Kennedy, J., concurring))).

Lastly, although, "most witnesses . . . will be located in Wisconsin," according to Gilbertson, Filing 20 at 16, the convenience to witnesses also does not obviously favor transfer. One of the considerations relevant to this analysis is whether the Court can compel the attendance of witnesses. *Bhd of Maint. of Way Employees Div./IBT*, 485 F. Supp. 3d at 1061 (citing *In re Apple, Inc.*, 602 F.3d at 912) ("In deciding whether to transfer a case under section 1404(a) courts

36

typically have taken into account considerations such as the following . . . (2) the convenience of the witnesses (willingness of witnesses to appear, ability to subpoena witnesses, adequacy of deposition testimony).") Under Federal Rule of Civil Procedure 45(b)(2), "A subpoena may command a person to attend a trial, hearing or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). The distance to the possible witnesses located in Wisconsin exceeds the 100-mile limit provided in Rule 45. "The fact that witnesses in [Wisconsin] cannot be compelled to testify if the trial is held in [Nebraska] weighs in favor of transfer." *Medicap Pharm., Inc. v. Faidley*, 416 F.Supp.2d 678, 688 (S. D. Iowa 2006). However, "[t]his is true only . . . if it is shown that the witnesses in [Wisconsin] have relevant testimony and that testimony will be inadequate if offered only via deposition." *See id.* Because "federal courts give considerable deference to a plaintiff's choice of forum," Gilbertson "bears the burden of proving that transfer is warranted." *In re Apple, Inc.*, 602 F.3d at 913. Gilbertson has not met this burden here, as he has offered only conclusory suggestions that unnamed witnesses in Wisconsin have relevant testimony and cannot simply be deposed. *See* Filing 20 at 16 (explaining that "most witnesses and other evidence will be located in Wisconsin"); Filing 28 at 9 (saying "all of the customers at issue that could possibly be called as witnesses are in Wisconsin" and that the "employees allegedly solicited who may be called as witnesses all reside in Wisconsin"). Nowhere in either of Gilbertson's briefs does he explain what witnesses may be called nor how these Wisconsin-based witnesses will offer relevant testimony that cannot be offered via deposition. *Medicap Pharm., Inc.*, 416 F.Supp.2d at 688.

Other facts relating to the convenience of witnesses do not definitively point in the direction of transfer. For instance, Plaintiffs state that "[k]ey witnesses and decisionmakers concerning the Company's confidential information, competitive strategy, workforce decisions,

and damages are in Nebraska." Filing 22 at 13; *see Terra Int'l, Inc.*, 119 F.3d at 696–97 ("Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for change of venue." (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)). Therefore, Gilbertson has similarly failed to show that convenience to the witnesses favors transferring the case such that the Court should look beyond his consent to Nebraska and the "considerable deference [given] to a plaintiff's choice of forum." *In re Apple, Inc.*, 602 F.3d at 913; *Atl. Marine Const. Co.*, 571 U.S. at 59–60 (majority opinion) (quoting *Stewart Org., Inc.*, 187 U.S at 33 (Kennedy, J., concurring))). Gilbertson's request for transfer is, accordingly, denied.

### E. Objections to Magistrate Judge's Order Denying Plaintiffs' Motion for Expedited Discovery

The Court now turns its attention to Plaintiffs' Objections to Magistrate Judge's Order Denying Motion for Expedited Discovery, Filing 41. Because Century Traffic is no longer a defendant in this case, as this Court does not have personal jurisdiction over Century Traffic, Plaintiffs' Objections are assessed only as to Gilbertson.

#### 1. Background

The Court provides the following background relating to the magistrate judge's decision to deny Plaintiffs' Motion for Expedited Discovery to supplement the background provided above and to provide context for the following discussion.

On December 3, 2025, Plaintiffs filed a Motion for Expedited Discovery "request[ing] that the Court enter an order allowing the parties to conduct expedited discovery to prepare for a preliminary injunction hearing." Filing 26 at 3. This motion was filed prior to the Court's December 19, 2025, order denying Plaintiffs' requested temporary restraining order. Filing 38.[12]

---

[12] The motion, as it relates to a request for a preliminary injunction, remains outstanding. Filing 38.

Plaintiffs asked the Court to "enter an order finding good cause for Plaintiffs to conduct . . . limited discovery within forty-five (45) days of its order on Plaintiffs' requested temporary restraining order." Filing 26 at 3. Plaintiffs specifically request the Court issue an order:

> (1) Allowing Plaintiffs to take three (3) depositions, specifically allowing Plaintiffs to notice, schedule, and complete the depositions of Century Traffic (through a corporate representative), Gilbertson, and Educated Solutions (through a corporate representative), and allowing Defendants to depose each of the Plaintiffs (through corporate representatives) on the same terms;
>
> (2) Allowing Plaintiffs and Defendants to serve up to ten (10) interrogatories, up to ten (10) requests for production of documents, and up to ten (10) requests for admission on each other, and any responses and/or objections to such discovery requests shall be due no later than ten (10) calendar days after service of such discovery requests; and
>
> (3) Allowing Plaintiffs and Defendants to subpoena documents or records from non-parties, and non-parties shall respond to any such subpoena within ten (10) calendar days of service of the subpoena.

Filing 26 at 3–4.

On December 19, 2025, the Court denied the part of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction seeking a temporary restraining order. Filing 38 at 23. On January 9, 2026, the magistrate judge issued an order denying Plaintiffs' Motion for Expedited Discovery. Filing 40 at 2. Among other things, the magistrate judge stated,

> Plaintiffs request much broader discovery in this case than the request at issue in *Straka*. Upon review, the court finds it would be prejudicial to require Defendants to engage in early discovery when it is possible that the case may not survive the court's ruling on the motion to dismiss. Further Judge Buescher noted the delay between the filing of the complaint and the filing on the motion for temporary restraining order and for preliminary injunction minimizes some of the "emergency" of Plaintiffs' requests. In light of Judge Buescher's findings in the order denying the temporary restraining order, and the pending motion to dismiss the complaint or transfer on jurisdictional grounds, the court finds that there is no good cause shown to allow the expedited discovery Plaintiffs seek.

Filing 40 at 2.

*2. Standard of Review*

Rule 72 of the Federal Rules of Civil Procedure provides in pertinent part as follows:

(a) **Nondispositive Matters.** When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) (authorizing designation of a magistrate judge "to hear and determine any pretrial matter," and authorizing a district judge to "reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"); *Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007) ("A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law.") (citing 28 U.S.C. § 636(b)(1)(A)); *see generally Devine v. Walker*, 984 F.3d 605, 607–08 (8th Cir. 2020) (explaining that the Circuit Courts of Appeals lack jurisdiction over direct appeals of a magistrate judge's decision on a nondispositive pretrial matter and may only review decisions of a district court).

The Eighth Circuit Court of Appeals has explained that a finding of fact is clearly erroneous "only when [the court is] left with a 'definite and firm conviction that a mistake has been committed.'" *United States v. Gray*, 59 F.4th 329, 332 (8th Cir. 2023) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *Doe v. United States*, 58 F.4th 955, 963 (8th Cir. 2023) (explaining that findings are not clearly erroneous when "[v]iewing the record as a whole, '[the court is] not left with the definite and firm conviction that a mistake has been committed.'") (quoting *United States v. Finley*, 612 F.3d 998, 1003 (8th Cir. 2010)). "An order is contrary to law

40

if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1043 (S.D. Iowa 2010) (internal quotation marks omitted).

### 3. The Parties' Arguments

In their Objections to Magistrate Judge's Order Denying Motion for Expedited Discovery, Plaintiffs maintain that "[they] moved for targeted expedited discovery to prepare for a preliminary injunction hearing in a restrictive covenant and unfair competition case." Filing 41 at 2. Plaintiffs objected to the magistrate judge's order on the grounds that the order "is contrary to law and, in material respects, clearly erroneous in its application of the good-cause standard for expedited discovery under Rule 26(d)(1)." Filing 41. Plaintiffs advance four main arguments to support that position. First, Plaintiffs assert that Judge Carson's order is contrary to law in that it misapplies the good cause standard "by treating prejudice and a pending jurisdictional motion as dispositive, rather than balancing Plaintiffs' demonstrated need for limited, targeted discovery." *See* Filing 41 at 3. Second, Plaintiffs contend that the order is contrary to law because the order "treated the existence of Defendants' jurisdictional motion—and the possibility that the case may not survive it—as a categorical basis to deny all expedited discovery, rather than as a factor to be managed through scope or sequencing." *See* Filing 41 at 5. Third, Plaintiffs assert that the ruling is "contrary to law and clearly erroneous" because the order "relied on the TRO denial's lack-of-evidence findings to conclude that Plaintiffs failed to show good cause for expedited discovery, effectively using the TRO ruling as a substitute for the [good cause analysis]." *See* Filing 41 at 6. Lastly, Plaintiffs assert that the order is clearly erroneous because it "disregards Plaintiffs' showing that critical evidence bearing on likelihood of success and irreparable harm is uniquely within Defendants' possession and fails to consider narrower alternatives to total denial." *See* Filing 41 at 7.

In response, Gilbertson asserts that "Plaintiffs' objections rest on three false premises." Filing 42 at 2. First, Gilbertson asserts that an explicit balancing test is not required to assess whether good cause existed and that "Judge Carson's decision was sufficiently reasonable and correctly applied the good cause standard." Filing 42 at 2–3. Second, Gilbertson asserts Judge Carson weighed "the same factors which make up the balancing test that Plaintiffs also argue that [Judge Carson] failed to perform." Filing 42 at 3–4. That is, Gilbertson argues that Judge Carson "did consider the Plaintiffs' need for their discovery against the prejudice which the Defendants would face if so ordered." Filing 42 at 4. Third, Gilbertson asserts that "expedited discovery is the exception, not the rule," and "Plaintiffs offer nothing in any event to demonstrate an emergency need . . . [as] [t]here was no showing that any employee was poached, any customers were lost, or confidential information was obtained by Defendant Century Traffic, LLC through Defendant Gilbertson." Filing 42 at 5.

4. *The Magistrate Judge Sufficiently Balanced Plaintiffs' Alleged Need Against Prejudice to Gilbertson in Denying Plaintiffs' Motion for Expedited Discovery*

Federal Rule of Civil Procedure 26(d)(1) states, "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order. Fed. R. Civ. P. 26(d)(1). "A party may request expedited discovery by demonstrating good cause." *Straka v. Clement*, No. 8:24CV24, 2024 WL 2155029, at *1 (D. Neb. May 14, 2024) (citing *Empirical Foods, Inc. v. Primus Builders, Inc.*, No. 8:19CV457, 2020 WL 5064220, at *15 (D. Neb. Aug. 27, 2020) (collecting cases applying a good cause standard to requests for expedited discovery)). "[I]n general, the 'good cause' standard should be applied to requests for expedited discovery, balancing the need for expedited discovery, in the administration of justice, against the prejudice to the responding party, and considering all of the surrounding

circumstances." *Wachovia Sec., L.L.C.*, 571 F. Supp. 2d at 1050. "Factors commonly considered in determining the reasonableness of an expedited discovery request include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Meritain Health Inc. v. Express Scripts, Inc.*, No. 4:12–CV–266 CEJ, 2012 WL 1320147, at *2 (E.D. Mo. Apr. 17, 2012).

Contrary to Plaintiffs' assertions, the magistrate judge's order did not treat any one factor as dispositive when reaching the conclusion that Plaintiffs did not show need sufficient to depart from the normal course of discovery. Filing 40. In other words, Judge Carson balanced Plaintiffs' alleged need for expedited discovery against prejudice to Gilbertson and found that, after the consideration of the relevant factors, there was not good cause to order expedited discovery. Filing 40 at 1–2. Judge Carson considered that the motion was to expedite discovery before a preliminary injunction hearing. *See* Filing 40 at 1. However, Judge Carson also found the alleged need to expedite discovery before the hearing wanting for several reasons. Among other things, Judge Carson observed that this Court "noted the delay between the filing of the complaint and the filing of the motion for temporary restraining order and for preliminary injunction minimizes some of the 'emergency' of Plaintiffs' requests." Filing 40 at 2. In assessing Plaintiffs' need for expedited discovery, Judge Carson also observed that this Court's December 19, 2025, order undermined the alleged need in other ways too. Filing 40 at 1–2. For instance, Judge Carson rearticulated the December 19, 2025, order's finding that "[t]here was no showing that any employee was poached, any customers were lost, or confidential information was obtained by Defendant Century Traffic, LLC, through Defendant Gilbertson." Filing 40 at 1 (citing Filing 38). Elsewhere in the magistrate

judge's order denying expedited discovery, the prejudice to Gilbertson was weighed. Filing 40 at 2. Judge Carson noted *inter alia* that the requested discovery was relatively broad and would require Gilbertson to shoulder a burden he would otherwise not have to bear if discovery followed its normal course. Filing 40 at 2. For these and other reasons, Judge Carson found that the relevant surrounding circumstances did not show good cause when the limited need for expedited discovery was weighed against prejudice to Gilbertson. *Wachovia Sec., L.L.C.*, 571 F. Supp. 2d at 1050.

A need for expedited discovery can be conspicuous "where the [C]ourt has denied [Plaintiffs'] request for a temporary restraining order, but has left open the question of whether [Plaintiffs] [are] nevertheless entitled to a preliminary injunction," especially when the core question before the Court is whether movants have marshaled enough evidence to show irreparable harm or likelihood of success for purposes of the preliminary injunction analysis. *See Wachovia Sec., L.L.C.*, 571 F. Supp. 2d at 1049–50. However, such circumstances do not push the alleged need into the territory of legitimate need when the failure of the motion for temporary restraining order concerned untimeliness, as Plaintiffs' motion in this case did. Filing 38 at 21 (observing a lack of diligence between filing the Complaint and the Motion for TRO and saying "the allegations show that it has been several months . . . since Plaintiffs became aware of the conduct that is the basis for the Complaint and Motion for TRO").

Nonetheless, Plaintiffs argue that the good cause standard has been met. Plaintiffs' arguments are unavailing for several reasons. Plaintiffs' first argument posits that the magistrate judge's order treated prejudice and a pending motion as dispositive and did not balance need against prejudice. Filing 41 at 3. However, as the Court has shown, no single factor was given dispositive weight by Judge Carson. Rather, Plaintiffs failed to demonstrate a need that would warrant departure from the ordinary course of discovery. Filing 40 at 1–2. Second, Plaintiffs argue

44

that the magistrate judge treated the "the existence of Defendants' jurisdictional motion . . . as a categorical basis to deny all expedited discovery." Filing 41 at 5. As the Court observed above, however, Judge Carson weighed Plaintiffs' need for expedited discovery against prejudice to Gilbertson and consulted various relevant circumstances in doing so. Filing 40 at 1–2. Third, Plaintiffs argue that "[a] denial of temporary restraining relief, decided on an emergency and undeveloped record, does not resolve whether expedited discovery is warranted to develop the evidentiary record for a preliminary injunction." Filing 41 at 6. As noted above, Plaintiffs' motion for temporary restraining order failed not only for failure to marshal enough evidence but also for untimeliness, which minimizes emergency need. Filing 38 at 22 ("The Court concludes that the Motion for TRO was not 'timely' under the circumstances."). Lastly, Plaintiffs argue that "[t]he Order denied all expedited discovery without addressing Plaintiffs' proposed narrowing alternatives or explaining why tailored or phased discovery could not adequately mitigate any perceived prejudice." Filing 41 at 7. However, after considering the relevant circumstances, Judge Carson found that Plaintiffs failed to show any need sufficient to depart from the ordinary course of discovery. *Wachovia Sec., L.L.C.*, 571 F. Supp. 2d at 1050.

"An order is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Haviland*, 692 F. Supp. 2d at 1043 (internal quotation marks omitted). "[I]n general, the 'good cause' standard should be applied to requests for expedited discovery, balancing the need for expedited discovery, in the administration of justice, against the prejudice to the responding party, and considering all of the surrounding circumstances." *Wachovia Sec., L.L.C.*, 571 F. Supp. 2d at 1050. The Court is satisfied that Judge Carson appropriately applied the good cause standard by balancing Plaintiffs' alleged need for expedited discovery against prejudice to Gilbertson. The Court concludes that Judge Carson's decision is not clearly erroneous or contrary

to law. Therefore, the Court denies Plaintiffs' Motion for Expedited Discovery and upholds Judge Carson's order.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue, Filing 19, is granted in part and denied in part as follows:

1.      Defendants' Motion to dismiss is granted with respect to Century Traffic; and

2.      Defendants' Motion is denied in all respects with regard to Gilbertson.

IT IS FURTHER ORDERED that Plaintiffs' Objections to Magistrate Judge's Order Denying Motion for Expedited Discovery, Filing 41, are overruled and the magistrate judge's order, Filing 40, is upheld.

This case will proceed on Plaintiffs' claims against Gilbertson.

Dated this 26th day of March, 2026.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge

46